RICHARDSON *v.* UNITED STATES

No. 97–8629.   Argued February 22, 1999—Decided June 1, 1999

814

BREYER, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and STEVENS, SCALIA, SOUTER, and THOMAS, JJ., joined. KENNEDY, J., filed a dissenting opinion, in which O'CONNOR and GINSBURG, JJ., joined, *post*, p. 825.

*William A. Barnett, Jr.*, by appointment of the Court, 525 U. S. 959, argued the cause and filed briefs for petitioner.

*Irving L. Gornstein* argued the cause for the United States. With him on the brief were *Solicitor General Wax-*

*man, Assistant Attorney General Robinson, Deputy Solicitor General Dreeben,* and *Joel M. Gershowitz.*[*]

JUSTICE BREYER delivered the opinion of the Court.

A federal criminal statute forbids any "person" from "engag[ing] in a continuing criminal enterprise." 84 Stat. 1264, 21 U.S.C. §848(a). It defines "continuing criminal enterprise" (CCE) as involving a "violat[ion]" of the drug statutes where "such violation is a part of a continuing series of violations." §848(c). We must decide whether a jury has to agree unanimously about which specific violations make up the "continuing series of violations." We hold that the jury must do so. That is to say, a jury in a federal criminal case brought under §848 must unanimously agree not only that the defendant committed some "continuing series of violations" but also that the defendant committed each of the individual "violations" necessary to make up that "continuing series."

I

The CCE statute imposes a mandatory minimum prison term of at least 20 years upon a person who engages in a "continuing criminal enterprise." §848(a). It says:

"[A] person is engaged in a continuing criminal enterprise if—

"(1) he violates any provision of [the federal drug laws, *i. e.,*] this subchapter or subchapter II of this chapter the punishment for which is a felony, and

"(2) such violation is a part of a continuing series of violations of [the federal drug laws, *i. e.,*] this subchapter or subchapter II of this chapter—

"(A) which are undertaken by such person in concert with five or more other persons with respect to whom

---

*Wendy Sibbison, David M. Porter,* and *Edward M. Chikofsky* filed a brief for the National Association of Criminal Defense Lawyers as *amicus curiae* urging reversal.

such person occupies a position of organizer [or supervisor or manager] and

"(B) from which such person obtains substantial income or resources." § 848(c).

In 1994 the Federal Government charged the petitioner, Eddie Richardson, with violating this statute. The Government presented evidence designed to show that in 1970 Richardson had organized a Chicago street gang called the Undertaker Vice Lords; that the gang had distributed heroin, crack cocaine, and powder cocaine over a period of years stretching from 1984 to 1991; and that Richardson, known as "King of all the Undertakers," had run the gang, managed the sales, and obtained substantial income from those unlawful activities. The jury convicted Richardson.

The question before us arises out of the trial court's instruction about the statute's "series of violations" requirement. The judge rejected Richardson's proposal to instruct the jury that it must "unanimously agree on which three acts constituted [the] series of violations." App. 21. Instead, the judge instructed the jurors that they "must unanimously agree that the defendant committed at least three federal narcotics offenses," while adding, "[y]ou do not . . . have to agree as to the particular three or more federal narcotics offenses committed by the defendant." *Id.*, at 37. On appeal, the Seventh Circuit upheld the trial judge's instruction. 130 F. 3d 765, 779 (1997). Recognizing a split in the Circuits on the matter, we granted certiorari. Compare *United States* v. *Edmonds,* 80 F. 3d 810, 822 (CA3 1996) (en banc) (jury must unanimously agree on which "violations" constitute the series), with *United States* v. *Hall,* 93 F. 3d 126, 129 (CA4 1996) (unanimity with respect to particular "violations" is not required), and *United States* v. *Anderson,* 39 F. 3d 331, 350–351 (CADC 1994) (same). We now conclude that unanimity in respect to each individual violation is necessary.

## II

Federal crimes are made up of factual elements, which are ordinarily listed in the statute that defines the crime. A (hypothetical) robbery statute, for example, that makes it a crime (1) to take (2) from a person (3) through force or the threat of force (4) property (5) belonging to a bank would have defined the crime of robbery in terms of the five elements just mentioned. Cf. 18 U. S. C. § 2113(a). Calling a particular kind of fact an "element" carries certain legal consequences. *Almendarez-Torres* v. *United States*, 523 U. S. 224, 239 (1998). The consequence that matters for this case is that a jury in a federal criminal case cannot convict unless it unanimously finds that the Government has proved each element. *Johnson* v. *Louisiana*, 406 U. S. 356, 369–371 (1972) (Powell, J., concurring); *Andres* v. *United States*, 333 U. S. 740, 748 (1948); Fed. Rule Crim. Proc. 31(a).

The question before us arises because a federal jury need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element, say, which of several possible means the defendant used to commit an element of the crime. *Schad* v. *Arizona*, 501 U. S. 624, 631–632 (1991) (plurality opinion); *Andersen* v. *United States*, 170 U. S. 481, 499–501 (1898). Where, for example, an element of robbery is force or the threat of force, some jurors might conclude that the defendant used a knife to create the threat; others might conclude he used a gun. But that disagreement—a disagreement about means—would not matter as long as all 12 jurors unanimously concluded that the Government had proved the necessary related element, namely, that the defendant had threatened force. See *McKoy* v. *North Carolina*, 494 U. S. 433, 449 (1990) (Blackmun, J., concurring).

In this case, we must decide whether the statute's phrase "series of violations" refers to one element, namely a "series," in respect to which the "violations" constitute the underlying brute facts or means, or whether those words

create several elements, namely the several "violations," in respect to *each* of which the jury must agree unanimously and separately. Our decision will make a difference where, as here, the Government introduces evidence that the defendant has committed more underlying drug crimes than legally necessary to make up a "series." (We assume, but do not decide, that the necessary number is three, the number used in this case.) If the statute creates a single element, a "series," in respect to which individual violations are but the means, then the jury need only agree that the defendant committed at least three of all the underlying crimes the Government has tried to prove. The jury need not agree about which three. On the other hand, if the statute makes each "violation" a separate element, then the jury must agree unanimously about which three crimes the defendant committed.

### A

When interpreting a statute, we look first to the language. *United States* v. *Wells*, 519 U. S. 482, 490 (1997). In this case, that language may seem to permit either interpretation, that of the Government or of the petitioner, for the statute does not explicitly tell us whether the individual violation is an element or a means. But the language is not totally neutral. The words "violates" and "violations" are words that have a legal ring. A "violation" is not simply an act or conduct; it is an act or conduct that is contrary to law. Black's Law Dictionary 1570 (6th ed. 1990). That circumstance is significant because the criminal law ordinarily entrusts a jury with determining whether alleged conduct "violates" the law, see *infra*, at 822, and, as noted above, a federal criminal jury must act unanimously when doing so. Indeed, even though the words "violates" and "violations" appear more than 1,000 times in the United States Code, the Government has not pointed us to, nor have we found, any legal source reading any instance of either word as the Government would have us read them in this case. To hold that

each "violation" here amounts to a separate element is consistent with a tradition of requiring juror unanimity where the issue is whether a defendant has engaged in conduct that violates the law. To hold the contrary is not.

The CCE statute's breadth also argues against treating each individual violation as a means, for that breadth aggravates the dangers of unfairness that doing so would risk. Cf. *Schad* v. *Arizona, supra,* at 645 (plurality opinion). The statute's word "violations" covers many different kinds of behavior of varying degrees of seriousness. The two chapters of the Federal Criminal Code setting forth drug crimes contain approximately 90 numbered sections, many of which proscribe various acts that may be alleged as "violations" for purposes of the series requirement in the statute. Compare, *e. g.,* 21 U. S. C. §§ 842(a)(4) and (c) (1994 ed. and Supp. III) (providing civil penalties for removing drug labels) and 21 U. S. C. § 844(a) (Supp. III) (simple possession of a controlled substance) with 21 U. S. C. § 858 (endangering human life while manufacturing a controlled substance in violation of the drug laws) and § 841(b)(1)(A) (possession with intent to distribute large quantities of drugs). At the same time, the Government in a CCE case may well seek to prove that a defendant, charged as a drug kingpin, has been involved in numerous underlying violations. The first of these considerations increases the likelihood that treating violations simply as alternative means, by permitting a jury to avoid discussion of the specific factual details of each violation, will cover up wide disagreement among the jurors about just what the defendant did, or did not, do. The second consideration significantly aggravates the risk (present at least to a small degree whenever multiple means are at issue) that jurors, unless required to focus upon specific factual detail, will fail to do so, simply concluding from testimony, say, of bad reputation, that where there is smoke there must be fire.

Finally, this Court has indicated that the Constitution itself limits a State's power to define crimes in ways that would permit juries to convict while disagreeing about means, at least where that definition risks serious unfairness and lacks support in history or tradition. *Schad* v. *Arizona,* 501 U. S., at 632–633 (plurality opinion); *id.,* at 651 (SCALIA, J., concurring) ("We would not permit . . . an indictment charging that the defendant assaulted either X on Tuesday or Y on Wednesday . . ."). We have no reason to believe that Congress intended to come close to, or to test, those constitutional limits when it wrote this statute. See *Garrett* v. *United States,* 471 U. S. 773, 783–784 (1985) (citing H. R. Rep. No. 91–1444, pt. 1, pp. 83–84 (1970)) (in making CCE a separate crime, rather than a sentencing provision, Congress sought increased procedural protections for defendants); cf. *Gomez* v. *United States,* 490 U. S. 858, 864 (1989) ("It is our settled policy to avoid an interpretation of a federal statute that engenders constitutional issues if a reasonable alternative interpretation poses no constitutional question"); *Ashwander* v. *TVA,* 297 U. S. 288, 346–348 (1936) (Brandeis, J., concurring).

B

The Government's arguments for an interpretation of "violations" as means are not sufficiently powerful to overcome the considerations just mentioned, those of language, tradition, and potential unfairness. The Government, emphasizing the words *"continuing series,"* says that the statute, in seeking to punish drug kingpins, focuses upon the drug business, not upon the particular violations that constitute the business. Brief for United States 18–19. The argument, however, begs the question. Linguistically speaking, the statute punishes those kingpins who are involved in a "continuing series of *violations"* of the drug laws. And Congress might well have intended a jury to focus upon individual violations in order to assure guilt of the serious

crime the statute creates. Emphasizing the first two words in the passage does not eliminate the last.

Nor can the Government successfully appeal to a history or tradition of treating individual criminal "violations" as simply means toward the commission of a greater crime. The Government virtually concedes the absence of any such tradition when it says that the statute "departed significantly from common-law models and prior drug laws, creating a new crime keyed to the concept of a 'continuing criminal enterprise.'" *Id.*, at 18. The closest analogies it cites consist of state statutes making criminal such crimes as sexual abuse of a minor. State courts interpreting such statutes have sometimes permitted jury disagreement about a "specific" underlying criminal "incident" insisting only upon proof of a "continuous course of conduct" in violation of the law. *E. g., People* v. *Gear,* 19 Cal. App. 4th 86, 89–94, 23 Cal. Rptr. 2d 261, 263–267 (1993) (continuous sexual abuse of a child); *People* v. *Reynolds,* 294 Ill. App. 3d 58, 69–71, 689 N. E. 2d 335, 343–344 (1997) (criminal sexual assault of a minor and aggravated sexual abuse of a minor); *State* v. *Spigarolo,* 210 Conn. 359, 391–392, 556 A. 2d 112, 129 (1989) (committing an act likely to impair the health or morals of a child); *Soper* v. *State,* 731 P. 2d 587, 591 (Alaska App. 1987) (sexual assault in the first degree). With one exception, see Cal. Penal Code Ann. § 288.5(a) (West Supp. 1998), the statutes do not define the statutory crime in terms that require the commission of other predicate crimes by the defendant. The state practice may well respond to special difficulties of proving individual underlying criminal acts, *People* v. *Gear, supra,* at 90–92, 23 Cal. Rptr. 2d, at 264–265, which difficulties are absent here. See *infra,* at 823–824. The cases are not federal but state, where this Court has not held that the Constitution imposes a jury-unanimity requirement. *Johnson* v. *Louisiana,* 406 U. S., at 366 (Powell, J., concurring). And their special subject matter indicates that they represent an exception; they do not represent a general

tradition or a rule. *People* v. *Gear, supra,* at 89–92, 23 Cal. Rptr. 2d, at 263–265.

In fact, federal criminal law's treatment of recidivism offers a competing analogy no more distant than the analogy the Government offers. See *Garrett* v. *United States, supra,* at 782 (the statute originated in a "recidivist provision . . . that provided for enhanced sentences"). If one looks to recidivism, one finds that commission of a prior crime will lead to an enhanced punishment only when a relevant factfinder, judge, or jury has found that the defendant committed that specific individual prior crime. Where sentencing is at issue, the judge, enhancing a sentence in light of recidivism, must find a prior individual conviction, United States Sentencing Commission, Guidelines Manual §§ 4A1.1, 4B1.1 (Nov. 1998), which means that an earlier factfinder (*e. g.,* a unanimous federal jury in the case of a federal crime) found that the defendant committed the specific earlier crime, §§ 4A1.2(a)(1), 4B1.2(c). Where a substantive statute is at issue, for example, a statute forbidding a felon's possession of a firearm, 18 U. S. C. § 922(g) (1994 ed. and Supp. III), the relevant precondition, namely that the gun possessor be a felon, means at a minimum that an earlier factfinder (*e. g.,* a unanimous federal jury in the case of a federal crime) found that the defendant in fact committed that earlier individual crime. The Government's interpretation is inconsistent with this practice, for it, in effect, imposes punishment on a defendant for the underlying crimes without any factfinder having found that the defendant committed those crimes. If there are federal statutes reflecting a different practice or tradition, the Government has not called them to our attention, which suggests that any such statute would represent a lesser known exception to ordinary practice. Cf. *Schad* v. *Arizona,* 501 U. S., at 633 (plurality opinion) ("[I]t is an assumption of our system of criminal justice . . . that no person may be punished criminally save upon proof of some specific illegal conduct").

Neither are we convinced by the Government's two remaining significant arguments. First, the Government says that a jury-unanimity requirement will make the statute's crime too difficult to prove—to the point where it is unreasonable to assume Congress intended such a requirement. But we do not understand why a unanimity requirement would produce that level of difficulty. After all, the Government routinely obtains the testimony of underlings—street-level dealers who could point to specific incidents—as well as the testimony of agents who make controlled buys or otherwise observe drug transactions. Such witnesses should not have inordinate difficulty pointing to specific transactions. Or, if they do have difficulty, would that difficulty in proving individual specific transactions not tend to cast doubt upon the existence of the requisite "series"?

The dissent, but not the Government, argues that the prosecution will now have to prove that the defendant derived substantial income or resources from, and that five persons were involved with, the specific underlying crimes the jury unanimously agrees were committed. See *post,* at 830. To the extent the dissent suggests that those other statutory requirements must be satisfied with respect to *each* underlying crime, it is clearly wrong. Those requirements must be met with respect to the *series,* which, at a minimum, permits the jury to look at all of the agreed-upon violations in combination. Even if the jury were limited to the agreed-upon violations, we still fail to see why prosecutions would prove unduly difficult. The dissent writes as if it follows from its reading that conviction under the CCE statute depends on specific proof of specific sales to specific street-level users. See *post,* at 832. That is not true. A specific transaction is not an element of possession with intent to distribute under 21 U. S. C. § 841. It would be enough to present testimony, like that of Michael Sargent partially recounted by the dissent, showing that the defendant supplied a runner in his organization with large quantities of drugs on or about

particular dates as alleged in an indictment. And one need only examine Sargent's testimony to dispel any fears about fading memories. He testified that he received from Richardson large quantities of heroin three times a week; he was able to specify the location where Richardson gave him the drugs; he was able to recall precisely how the heroin was packaged when Richardson gave it to him. Tr. 1399–1401. Though he was not pressed to be specific, he even testified that he started receiving drugs from Richardson sometime in the beginning of 1989. *Id.*, at 1382. Given the record in this case, we find it hard to believe the Government will have as hard a time producing evidence sufficient to support a CCE conviction as the dissent suggests.

Second, the Government points to a different portion of the statute, which requires a defendant to have supervised "five or more other persons." 21 U. S. C. § 848(c)(2)(A). The Government says that no one claims that the jury must unanimously agree about the identity of those five other persons. It adds that the jury may also disagree about the brute facts that make up other statutory elements such as the "substantial income" that the defendant must derive from the enterprise, § 848(c)(2)(B), or the defendant's role in the criminal organization, § 848(c)(2)(A). Assuming, without deciding, that there is no unanimity requirement in respect to these other provisions, we nonetheless find them significantly different from the provision before us. They differ in respect to language, breadth, tradition, and the other factors we have discussed.

These considerations, taken together, lead us to conclude that the statute requires jury unanimity in respect to each individual "violation." We leave to the Court of Appeals the question whether to engage in harmless-error analysis, and if so, whether the error was harmless in this case.

The judgment of the Court of Appeals is vacated, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

Justice Kennedy, with whom Justice O'Connor and Justice Ginsburg join, dissenting.

The evidence in this case established that petitioner was the head of a sophisticated, well-entrenched, successful drug distribution enterprise. It had sales of hundreds of kilograms of heroin and cocaine over a period of years in Chicago. The jury found that petitioner was engaged in a "continuing criminal enterprise" (CCE).

Title 21 U. S. C., subchapter I, § 848(c), defines a person as engaged in a CCE if—

"(1) he violates any provision of this subchapter or subchapter II of this chapter the punishment for which is a felony, and

"(2) such violation is a part of a continuing series of violations of this subchapter or subchapter II of this chapter—

"(A) which are undertaken by such person in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management, and

"(B) from which such person obtains substantial income or resources." 84 Stat. 1266.

We are concerned with subparagraph (2), which by its terms requires the Government to establish the following elements if it is to prove a CCE: (1) that the violation is part of a continuing series of violations of the drug laws; (2) that the continuing series is undertaken by the accused in concert with five or more other persons; (3) that the accused occupied a position of organizer, supervisor, or manager, with respect to those other persons; and (4) that the accused obtained substantial income or resources from the continuing series of violations.

The Court today reasons that the first enumerated element in the subparagraph is not an element at all; instead, it is shorthand for some number of other elements corresponding to the individual violations in the series. The jury

must therefore be unanimous not as to whether there was a continuing series of violations but rather as to each of the individual violations making up some subset of the continuing series. The Court does not decide how many elements this portion of the statute contains, although it assumes without deciding that three will do. *Ante*, at 818. The Court gives no satisfactory explanation for confining its holding to the continuing series phrase, while assuming nonunanimity as to the specifics of the other elements in the same subparagraph. Nor does the Court attempt to explain how a jury is supposed to make sense of the other elements— like deriving substantial income from the series—now that the series has in effect been replaced with a few discrete violations.

The consequences of the Court's decision go well beyond the jury instruction the Court discusses. The Court's decision of necessity alters the manner in which the Government must frame its indictment and design its trial strategy. The elements of the offenses charged must be set forth in the indictment, see *Hamling* v. *United States*, 418 U. S. 87, 117 (1974), so henceforth when the Government indicts it must choose three or more specific violations and allege those, despite its ability to show that the CCE involves hundreds or thousands of sales. This is a substantial departure from what Congress intended. I submit my respectful dissent.

I

The Government procured a two-count indictment against petitioner. The CCE charge is in Count II and the Government, in my view, charged precisely what Congress said it should. Count II was as follows:

"1. From in or about 1984, to and including October 1991, at Chicago and elsewhere in the Northern District of Illinois, Eastern Division,

EDDIE RICHARDSON,
also known as 'Hi Neef' and 'Chief,' and
CARMEN TATE,
also known as 'Red' and 'Redman,'

defendants herein, did engage in a continuing criminal enterprise by committing a continuing series of felony violations of Section 841(a)(1) of Title 21, United States Code, which continuing series of violations was undertaken by defendants in concert with at least five other persons with respect to whom defendants occupied a position as organizer, a supervisory position, and some other position of management, and from which continuing series of violations defendants obtained substantial income and resources.

"2. The continuing series of violations undertaken by defendants EDDIE RICHARDSON and CARMEN TATE included:

"a. From in or about 1984 through and including October 1991, at Chicago, in the Northern District of Illinois, Eastern Division, defendants EDDIE RICHARDSON and CARMEN TATE knowingly and intentionally repeatedly distributed and caused to be distributed cocaine and cocaine base and possessed cocaine and cocaine base with intent to distribute, in violation of Title 21, United States Code, Section 841(a)(1).

"b. From in or about 1984 through and including October 1991, at Chicago, in the Northern District of Illinois, Eastern Division, defendants EDDIE RICHARDSON and CARMEN TATE knowingly and intentionally repeatedly distributed and caused to be distributed heroin and possessed heroin with intent to distribute, in violation of Title 21, United States Code, Section 841(a)(1).

"In violation of Title 21, United States Code, Section 848." App. 11–12.

By holding that the Government must in addition allege three or more discrete violations, thus pinning a case involving thousands of transactions on just three of them, the Court misunderstands the whole design and purpose of the statute.

We begin on common ground, for, as the Court acknowledges, it is settled that jurors need not agree on all of the means the accused used to commit an offense. *Schad* v. *Arizona*, 501 U. S. 624 (1991), confirmed this principle. In my view, Congress intended the "continuing series of violations" to be one of the defining characteristics of a continuing criminal enterprise, and therefore to be a single element of the offense, subject to fulfillment in various ways. The important point is not just that the violations occurred but that they relate to the enterprise and demonstrate its ongoing nature, hence the requirement of a "continuing" series. Evidence that the accused supervised a ring that engaged in thousands of illegal transactions is more probative of the continuing nature of the enterprise than evidence tending to show three particular violations.

Nowhere in the text of the statute or its legislative history does Congress show an interest in the particular predicate violations constituting the continuing series. Rather, the CCE offense is aimed at what Congress perceived to be a peculiar evil: the drug kingpin. The Court's observation that there is a tradition requiring juror unanimity where the issue is whether a defendant has engaged in conduct that violates the law, *ante*, at 818, simply restates the question presented. The Court has made clear in an earlier case that Congress did not "inten[d] to substitute the CCE offense for the underlying predicate offenses in the case of a big-time drug dealer," but rather intended "to permit prosecution for CCE in addition to prosecution for the predicate offenses." *Garrett* v. *United States*, 471 U. S. 773, 785, 786 (1985). The CCE statute provides a specific remedy to combat criminal organizations, in large part because of the perceived inade-

quacies of prior law. *Id.*, at 782–784. By treating the CCE offense like a simple recidivism statute, the Court's opinion does not conform to the statutory purpose.

The continuing series element reflects Congress' intent to punish those who organize or direct ongoing narcotics-related activity. As the Court said in *Garrett:* "A common-sense reading of this definition [of 'engaged in a continuing criminal enterprise'] reveals a carefully crafted prohibition aimed at a special problem. This language is designed to reach the 'top brass' in the drug rings, not the lieutenants and foot soldiers." *Id.*, at 781. As part of that statutory design, the continuing series element of the offense aims to punish those whose persistence and organization establish a successful, ongoing criminal operation. The continuing series element, as a consequence, is directed at identifying drug enterprises of the requisite size and dangerousness, not at punishing drug offenders for discrete drug violations.

The remaining elements of the CCE definition likewise target drug kingpins. With respect to the requirement of action in concert with five or more other persons, every Court of Appeals to have considered the issue has concluded that the element aims the statute at enterprises of a certain size, so the identity of the individual supervisees is irrelevant. See, *e. g., United States* v. *Harris,* 959 F. 2d 246, 255 (CADC 1992) *(per curiam)* (panel including Ruth Bader Ginsburg and Clarence Thomas, JJ.); *United States* v. *Garcia,* 988 F. 2d 965, 969 (CA9 1993); *United States* v. *Moorman,* 944 F. 2d 801, 803 (CA11 1991); *United States* v. *English,* 925 F. 2d 154, 159 (CA6 1991); *United States* v. *Linn,* 889 F. 2d 1369, 1374 (CA5 1989); *United States* v. *Jackson,* 879 F. 2d 85, 88 (CA3 1989); *United States* v. *Tarvers,* 833 F. 2d 1068, 1074–1075 (CA1 1987); *United States* v. *Markowski,* 772 F. 2d 358, 364 (CA7 1985). As for the remaining elements, it is undisputed that the jury need not agree unanimously on whether the defendant was a supervisor as opposed to an organizer or other manager, because the leader-

ship role is what matters. It should be equally apparent that the jury need not agree unanimously on which income or resources the defendant received from the CCE, because what matters is that there be substantial income from the continuing series, without regard to the form in which it arrives.

The Court assumes that other elements of the statute can be fulfilled without juror unanimity as to the means of fulfillment, and offers nothing more than the conclusory assertion that these other elements "differ in respect to language, breadth, [and] tradition" from the continuing series element. *Ante*, at 824. Not only does the Court fail to provide any analysis that might explain how the elements differ, it also ignores the point that they are the same in the one respect that counts for the statute's purposes, namely, that they are all ways of ensuring that the accused directs schemes of sufficient size, duration, and effectiveness to warrant special punishment, without regard to the particulars of the schemes.

It is easy enough to understand that a drug distribution organization should have five or more other persons to come within the condemnation of the statute. It is likewise easy to understand that the organization should generate substantial income for its leaders as a requirement for conviction. Once the continuing series has been replaced with three individual violations, however, the remaining elements become difficult for the jury to apply. The Court's unnecessary atomization of the continuing series element disrupts Congress' careful concentration on the ongoing enterprise and replaces it with a concentration on perhaps three violations picked out of the continuing series.

The Court seems to proceed on the assumption that any three small transactions involving a few grams will establish the requisite series. That is not so. In my view, the necessary consequence of the Court's ruling is that the three specific crimes must themselves be the ones, in the words

of the statute, "from which [the accused] obtains substantial income or resources." 21 U. S. C. § 848(c)(2)(B). Just any three will not do. This significant new burden will make prosecutions under the CCE statute remarkably more difficult. Three small transactions will probably not generate substantial income, and it is unlikely that each transaction will involve five or more other persons. Or there might be different views among the jurors as to which transactions netted substantial income and as to which were undertaken in concert with five or more others. It is disruptive of the statutory purpose to require the Government at the outset to isolate just three or more violations and then relate all the other parts of the CCE definition to just these offenses. Yet that is what the Court appears to require. As a consequence, the statute might not even reach businesses (like petitioner's) which depend for their success upon a high volume of relatively small sales, unless there is jury unanimity on 20 or 30 discrete transactions. It is all but inconceivable that Congress intended, in effect, to exempt such businesses from coverage by this unwarranted emphasis on individual transactions. It is the enterprise as a whole that must be examined, and the continuing series of violations relates to the entire scope of the operations.

In addition, the individual violations making up a continuing series may not always be easy to prove with particularity. The Court assures us that "witnesses should not have inordinate difficulty pointing to specific transactions." *Ante*, at 823. It then asks the rhetorical question: "Or, if they do have difficulty, would that difficulty in proving individual specific transactions not tend to cast doubt upon the existence of the requisite 'series'?" *Ibid.* Quite apart from the point already mentioned that the continuing series must relate to the elements of action in concert and receipt of substantial income, the answer to that question is "no." The evidence in this case so demonstrates.

Petitioner was the founder and leader of a gang called the Undertaker Vice Lords. The evidence indicated that petitioner operated what might be called a chain drugstore in Chicago, selling various kinds of drugs, including white and brown heroin, powder cocaine, and rock or crack cocaine, at various established locations or "spots." Several gang members pleaded guilty, cooperated with the Government, and testified at petitioner's trial. The following are but a few examples of the testimony offered against petitioner. Johnnie Chew, who ran a brown heroin distribution spot for the gang in 1987 and 1988, estimated that the gang sold a "frame"—25 packs, each containing 25 bags worth $25 apiece—every three to four days. Michael Sargent testified that, while he was in charge of a white heroin distribution spot, Richardson supplied him with $40,000 to $60,000 worth of heroin three times a week. Joseph Westmoreland estimated the Undertakers were collecting about $20,000 to $30,000 per day selling white heroin from 1988 to 1990. Andre Cal admitted cooking a quarter kilo of powder cocaine into crack cocaine two to three times a week for 10 months in the early 1990's. Several other gang members admitted to earning $50,000 to $60,000 each selling drugs for the gang on a regular basis. To suggest that Congress intended, in the face of devastating testimony like this, to allow petitioner to escape a CCE conviction because the witnesses did not describe any specific, individual transaction out of thousands (many of which are more than a decade old) is to misunderstand the nature of the crime Congress sought to prohibit.

State course-of-conduct crimes provide an analog to the federal CCE statute. A crime may be said to involve a continuing course of conduct because it is committed over a period of time, like kidnaping, harboring a fugitive, or failing to provide support for a minor. In such cases, the jury need not agree unanimously on individual acts that occur during the ongoing crime. See generally, e. g., B. Witkin &

N. Epstein, California Criminal Law § 2942, p. 245 (2d ed., Supp. 1997) ("A unanimity instruction is not required when the crime charged involves a continuous course of conduct . . . such as failure to provide, child abuse, contributing to the delinquency of a minor, and driving under the influence"). States have also chosen to define as continuous some crimes that involve repeated conduct where the details of specific instances may be difficult to prove, as in cases of child molestation or promoting prostitution. See, *e. g., People* v. *Adames,* 54 Cal. App. 4th 198, 62 Cal. Rptr. 2d 631 (1997) (continuous sexual abuse of a child); *People* v. *Reynolds,* 294 Ill. App. 3d 58, 689 N. E. 2d 335 (1997) (criminal sexual assault and aggravated sexual abuse of a minor); *State* v. *Molitor,* 210 Wis. 2d 416, 565 N. W. 2d 248 (App. 1997) (repeated sexual intercourse with underage partner); *State* v. *Doogan,* 82 Wash. App. 185, 917 P. 2d 155 (1996) (advancing prostitution and profiting from prostitution). The CCE offense has some attributes of both of these categories: To the extent the CCE offense aims to punish acting as leader of a drug enterprise, it targets an ongoing violation. To the extent it relies on there being a series of violations, it may be susceptible to difficulties of proof which make it reasonable to base a conviction upon the existence of the series rather than the individual violations. As in this very case, the transactions may have been so numerous or taken place so long ago that they cannot be recalled individually.

Having failed to confront the acknowledged purpose of the statute, the Court invokes the principle of constitutional doubt. Just last Term we warned that overuse of the doctrine risks aggravating the friction between the branches of Government "by creating (through the power of precedent) statutes foreign to those Congress intended, simply through fear of a constitutional difficulty that, upon analysis, will evaporate." *Almendarez-Torres* v. *United States,* 523 U. S. 224, 238 (1998). As discussed in Part II, *infra,* the CCE statute in my view passes constitutional muster. Yet the

Court today interprets the statute in a way foreign to Congress' intent without discussing any possible constitutional infirmity other than to say that it has "no reason to believe that Congress intended to come close to, or to test," the limits on the definition of crimes imposed by the Due Process Clause when it wrote the CCE statute. *Ante*, at 820.

There is no indication that Congress had any concerns about the statute's constitutionality. The Court seems to imply the contrary by citing *Garrett* for the proposition that Congress "sought increased procedural protections for defendants" in making CCE a separate crime, *ante*, at 820 (paraphrasing *Garrett*, 471 U. S., at 783–784). Taken in context, the passage from *Garrett* supports neither the Court's reading of the statute nor its invocation of constitutional doubt. *Garrett* held the Double Jeopardy Clause did not bar prosecution for the CCE offense after a prior conviction for one of the underlying predicate offenses. The passage in question discussed the debate in Congress over whether to impose enhanced punishments for drug kingpins by means of a separate offense or by means of a sentencing factor. The House Report cited by the Court noted that an amendment by Representative Dingell "made engagement in a continuing criminal enterprise a new and distinct offense with all its elements triable in court." H. R. Rep. No. 91–1444, pt. 1, p. 84 (1970). That is of course true, but it begs the question presented in this case, namely, whether the existence of a series is itself an element, or whether the individual offenses in that series are elements. To say that the jury must agree unanimously on the elements provides no guidance in determining what those elements are. The competing provision from Representative Poff, moreover, which would have treated engaging in a CCE as a sentencing factor, was also adopted, with the result that "both approaches are contained in the statute." *Garrett, supra*, at 784 (citing 21 U. S. C. §§ 848, 849, 850). There is thus no reason to think Congress thought it necessary for the jury to agree on which

particular predicate offenses made up the continuing series before an enhanced punishment may be imposed.

## II

In my view, there is no due process problem with interpreting the continuing series requirement as a single element of the crime. The plurality opinion in *Schad* spoke of "the impracticability of trying to derive any single test for the level of definitional and verdict specificity permitted by the Constitution." 501 U. S., at 637. Rather, our inquiry is guided by "due process with its demands for fundamental fairness and for the rationality that is an essential component of that fairness." *Ibid.* (citation omitted). Our analysis of fundamental fairness and rationality, by necessity, is contextual, taking into account both the purposes of the legislature and the practicalities of the criminal justice system. In the CCE context, the continuing series element advances the goals of the statute in a way that is neither unfair nor irrational: It is a direct and overt prohibition upon drug lords whose very persistence and success makes them a particular evil.

The CCE statute does not in any way implicate the suggestion in *Schad* that an irrational single crime consisting of, for instance, either robbery or failure to file a tax return would offend due process. See *id.,* at 633, 650. Although the continuing series may consist of different drug crimes, the mere proof of a series does not suffice to convict. The Government must also prove action in concert with five or more persons, a leadership role for the defendant with respect to those persons, and substantial income or resources derived from the continuing series. The presence of these additional elements distinguishes the CCE statute from a simple recidivism statute, notwithstanding the Court's attempt to draw an analogy between the two. See *ante,* at 822.

The Court cites *Garrett* for the proposition that the CCE statute originated in a "'recidivist provision . . . that provided for enhanced sentences.'" *Ante*, at 822. In fact, the point the Court was making in *Garrett* was that Congress rejected the simple recidivist provision in favor of the current definition of a CCE, which, as the Court in *Garrett* took pains to point out, "is not drafted in the way that a recidivist provision would be drafted" but instead uses "starkly contrasting language." 471 U. S., at 781–782 (comparing the CCE definition of § 848 with the recidivist provision incorporated into § 849).

One could concede, *arguendo*, that if Congress were to pass a habitual-offender statute the sole element of which was the existence of a series of crimes without a requirement of jury unanimity on any underlying offense, then the statute would raise serious questions as to fairness and rationality because the jury's discretion would be so unconstrained. The statute before us is not of that type, for the various elements work together to channel the jury's attention toward a certain kind of ongoing enterprise. We should not strike down this reasonable law out of fear that we will not be able to deal in an appropriate manner with an unreasonable law if one should confront us. The CCE statute does not represent an end run around the Constitution's jury unanimity requirement, for Congress had a sound basis for defining the elements as it did: to punish those who act as drug kingpins. There are many ways to be a drug kingpin, just as there are many ways to commit murder or kidnaping.

With regard to the fundamental fairness of the alternative means of satisfying the continuing series element, the plurality opinion in *Schad* indicated that the Court should look to see whether the alleged predicate offenses making up the series in each particular case are morally equivalent. The alternative means of fulfilling an element "must reasonably reflect notions of equivalent blameworthiness or culpabil-

ity, whereas a difference in their perceived degrees of culpability would be a reason to conclude that they identified different offenses altogether." 501 U. S., at 643. The proper question is not whether the blameworthiness is comparable "in all possible instances"; rather, the question is whether one means of fulfillment "may ever be treated as [the] equivalent" of another, and in particular whether the alternative means presented in a given case may be so treated. *Id.,* at 643, 644. The continuity itself is what Congress sought to prohibit with the series element, so it makes no difference if the violations in the series involve comparable amounts of drugs.

In the absence of any reason to think Congress' definition of the CCE offense was irrational, or unfair under fundamental principles, or an illicit attempt to avoid the constitutional requirement of jury unanimity, there is no constitutional barrier to requiring jury unanimity on the existence of a continuing series of violations without requiring unanimity as to the underlying predicate offenses.

\* \* \*

Petitioner is just the sort of person at whom the CCE statute is aimed. Where witnesses have testified they sold drugs on a regular basis as part of an enterprise led by the defendant, it is appropriate for the jury to conclude that a continuing series of violations of the drug laws has taken place. Neither Congress' intent nor the Due Process Clause requires the result the Court reaches today, which rewards those drug kingpins whose operations are so vast that the individual violations cannot be recalled or charged with specificity. I would affirm the judgment of the Court of Appeals.