CRAWFORD, Chief Judge
(concurring in part and dissenting in part):
I agree with the majority that the military judge did not err with respect to Issue II. With regard to Issue I, like the court below, I find that appellant’s requested instruction was confusing and erroneous. Accordingly, I would find no abuse of discretion by the military judge in refusing to give this instruction. As I find the evidence to be legally sufficient to support the findings of guilt of the various specifications of Charge II and the Additional Charge, like the Court of Criminal Appeals, I would affirm appellant’s convictions and sentence.
At the conclusion of the evidence on findings, civilian defense counsel asked the military judge for a special instruction, as follows:
The Government is not required to prove all of the means or methods alleged in a particular specification.
At least two-thirds of the members, or _of the members, must agree with each other, however, that the same means or method alleged in a particular specification was, in fact, engaged in or employed by the Accused in allegedly committing the offense alleged in that particular specification. The two-thirds of the members need not unanimously agree on each means or method, but, in order to convict, must unanimously agree upon at least one such means or method as one engaged in by the Accused.
Unless the Government has proven the same means or method to at least two-thirds of the members, beyond a reasonable doubt, you must acquit the Accused of the offense alleged in that particular specification.
The military judge rejected the defense’s request and instructed as follows:
If you have doubt about the time or specific manner alleged but you are satisfied beyond a reasonable doubt that the offense was committed at a time or in a particular manner which differs slightly from the exact time or manner in the Specification, you may make minor modifications in reaching your findings by changing the time or manner described in the Specification, provided you do not change the nature or identity of the offense. If you discuss doing that, you can come and ask me for more suggestions on how to go about doing that.
A military judge has substantial discretion in deciding which instructions to give. United States v. Damatta-Olivera, 37 MJ 474, 478 (CMA 1993). See ROM 920(c), Discussion, Manual for Courts-Martial, United States (1995 ed.).[1] The test to determine whether denial of a requested instruction is error is whether: (1) the proposed charge is correct; (2) “it is not substantially covered in the main charge”; and (3) “it is on such a vital point in the ease that the failure to give it deprived defendant of a defense or seriously impaired its effective presentation.” Id., quoting United States v. Winborn, 14 USC-MA 277, 282, 34 CMR 57, 62 (1963).
In Schad v. Arizona, 501 U.S. 624, 631, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991), Justice Souter, writing for a four-justice plurality, answered appellant’s objection:
Our cases reflect a long-established rule of the criminal law that an indictment need not specify which overt act, among several named, was the means by which a crime was committed. In Andersen v. United States, 170 U.S. 481, 18 S.Ct. 689, 42 L.Ed. 1116 (1898), for example, we sustained a murder conviction against the challenge that the indictment on which the verdict was returned was duplicitous in charging that death occurred- through both shooting and drowning. In holding that “the Government was not required to make the charge in the alternative,” id. at 504, 18 S.Ct. 689, we explained that it was immate *390 rial whether death was caused by one means or the other. Cf. Borum v. United States, 284 U.S. 596, 52 S.Ct. 205, 76 L.Ed. 513 (1932) (upholding the murder conviction of three codefendants under a count that failed to specify which of the three did the actual killing); St. Clair v. United States, 154 U.S. 134, 145, 14 S.Ct. 1002, 38 L.Ed. 936 (1894). This fundamental proposition- is embodied in Federal Rule of Criminal Procedure 7(c)(1), which provides that “[i]t may be alleged in a single count that the means by which the defendant committed the offense are unknown or that the defendant committed it by one or more specified means.”
The Supreme Court recently reiterated this point in Richardson v. United States, 526 U.S. 813, 817, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999):
... a federal jury need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element, say, which of several possible means the defendant used to commit an element of the crime. Schad v. Arizona, 501 U.S. 624, 631-32, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991) (plurality opinion); Andersen v. United States, 170 U.S. 481, 499-501, 18 S.Ct. 689, 42 L.Ed. 1116 (1898). Where, for example, an element of robbery is force or the threat of force, some jurors might conclude that the defendant used a knife to create the threat; others might conclude he used a gun. But that disagreement — a disagreement about means — would not matter as long as all 12 jurors unanimously concluded that the Government had proved the necessary related element, namely, that the defendant had threatened force. See McKoy v. North Carolina, 494 U.S. 433, 449, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990) (Blackmun, J., concurring).
The Courts of Appeals are in agreement. United States v. Reeder, 170 F.3d 93, 105 (1st Cir.1999); Bae v. Peters, 950 F.2d 469, 480 (7th Cir.1991); United States v. Kim, 196 F.3d 1079, 1083 (9th Cir.1999); Williamson v. Ward, 110 F.3d 1508, 1523 (10th Cir.1997); Sims v. Singletary, 155 F.3d 1297, 1313 (11th Cir.1998); United States v. Vidal, 23 MJ 319, 324 (CMA 1987); United States v. Garner, 43 MJ 435, 437 (1996).
Accordingly, two-thirds of the members of the court-martial adjudicating appellant’s guilt or innocence had to agree that appellant committed the underlying offense. Two-thirds of the members did not have to agree on the method by which appellant committed his misconduct. As the proposed instruction did not comport with the law and was also confusing, the military judge did not abuse his discretion in denying the defense counsel’s request that he give it.
Issue III questions the legal sufficiency of the evidence. In the case of legal sufficiency of the evidence, the standard of review is “whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt.” United States v. Turner, 25 MJ 324 (CMA 1987); see Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Further, “[i]n resolving legal-sufficiency questions, this Court is bound to draw every reasonable inference from the evidence of record in favor of the prosecution.” United States v. Blocker, 32 MJ 281, 284 (CMA 1991); see United States v. McGinty, 38 MJ 131 (CMA 1993) (determination that one witness is more believable than another is sufficient).
In order to maintain a finding of conduct unbecoming an officer and gentleman, it must generally be shown (1) that “the accused did or omitted to do certain acts” and (2) that, “under the circumstances, these acts or omissions constituted conduct unbecoming an officer and gentleman.” Para. 59b, Part IV, Manual, supra. As the Manual explains:
Conduct violative of this article is action or behavior in an official capacity which, in dishonoring or disgracing the person as an officer, seriously compromises the officer’s character as a gentleman, or action or behavior in an unofficial or private capacity which, in dishonoring or disgracing the officer personally, seriously compromises the person’s standing as an officer. There are certain moral attributes common to the *391 ideal officer and the perfect gentleman, a lack of which is indicated by acts of dishonesty, unfair dealing, indecency, indecorum, lawlessness, injustice, or cruelty. Not everyone is or can be expected to meet unrealistically high moral standards, but there is a limit of tolerance based on customs of the service and military necessity below which the personal standards of an officer, cadet, or midshipman cannot fall without seriously compromising the person’s standing as an officer, cadet, or midshipman or the person’s character as a gentleman. This article prohibits conduct by a commissioned officer, cadet, or midshipman which, taking all the circumstances into consideration, is thus compromising.
Para. 59c(2), Part IV, Manual, supra (emphasis added). Clearly, when viewed in its entirety, appellant’s behavior exemplifies a standard against which a charge of conduct unbecoming an officer can be measured.
As this Court has said on prior occasions, we assess criminality under Article 133 by looking at whether the conduct charged is dishonorable and compromising, not whether it otherwise amounts to a crime. See United States v. Giordano, 15 USCMA 163, 168, 35 CMR 135, 140 (1964); United States v. Rogers, 54 MJ 244 (2000). I disagree with the majority’s piecemeal assessment of appellant’s remarks to his three female co-workers, instead of examining the totality of his relationship with these three officers and his sustained pattern of inappropriate comments.
The majority errs by concluding that unless appellant’s remarks were “unwelcomed,” as required by Air Force policy, his language was not a violation of Article 133.[2] While none of the three officer victims ever looked appellant in the eyes after he made one of his sexually suggestive remarks and said, ‘Tour comment is unwelcome,” that lack of a rebuke is not determinative of the issue. When one looks at the various comments that appellant made to his three nursing co-workers,[3]1 find a predatory pattern of comments *392 that are so pervasive as to compromise appellant’s standing with his colleagues as an Air Force officer, as well as creating an abusive work environment. As Capt TT, one of the victims, said in response to questioning: “There was often times that he said things that were inappropriate____” Another victim, lLt VC, sums up the situation best. When asked about appellant’s remarks to her, she responded: “I don’t think it would be appropriate for anyone to ask those type of questions, if you’re in the Air Force or not.” Taking the evidence in the light most favorable to the prosecution, I have no trouble finding that the triers of fact in this case could have found all the essential elements of the crime beyond a reasonable doubt. Accordingly, I would affirm the findings and sentence.

. All Manual provisions are cited to the version in effect at the time of appellant’s court-martial.
The current version is unchanged.

. Following his admission of Prosecution Exhibit 1, AFP 36-2705, which we all agree was properly admitted, the military judge gave the following cautionary instruction: "If you find that the accused did engage in the alleged conduct and that his conduct was contrary to the provisions of Prosecution Exhibit 1, it does not automatically follow that his conduct was unbecoming an officer. Prosecution Exhibit 1 is simply one piece of evidence for you to consider in determining if the accused’s conduct, should you determine that it occurred, was unbecoming an officer.” Unfortunately, it appears that the majority finds that Pros. Ex. 1 is the only piece of evidence that is determinative of whether or not appellant’s conduct was unbecoming an officer and a gentleman.

. "Specification 1, Charge II: In that CAPTAIN MICHAEL C. BROWN, United States Air Force, 42d Medical Operations Squadron, Maxwell Air Force Base, Alabama, a married man, did, at or near Maxwell Air Force Base, Alabama, on divers occasions from on or about 1 February 1995 to on or about 3 February 1995, wrongfully and dishonorably persistently direct comments and questions of a personal or sexual nature to First Lieutenant [VC], to wit: 'You have pretty hair,’ ‘You have pretty eyes,’ ‘How much do you weigh?,’ ‘What size are you?,’ 'What is your phone number?,’ ‘Do you have a boyfriend?,’ ‘Does your boyfriend live in Montgomery?,’ and 'What type men do you like?,’ or words to that effect.... that, under the circumstances, these comments [and] questions ... constituted conduct unbecoming an officer and gentleman.”
"Specification 7, Charge II — In that CAPTAIN MICHAEL C. BROWN, United States Air Force, 42d Medical Operations Squadron, Maxwell Air Force Base, Alabama, a married man, did, at or near Maxwell Air Force Base, Alabama, on divers occasions from on or about 12 February 1996 to on or about 29 March 1996, wrongfully and dishonorably persistently direct comments and questions of a personal or sexual nature to Captain [LK], to wit: 'I’m coming over tonight,’ ‘What kind of man are you attracted to?,’ ‘Are you dating anyone?,’ ‘You look fit,' ‘Would you like to go sight-seeing?,' and You don’t need to work out because you look fine,’ or words to that effect, that, under the circumstances, these comments and questions constituted conduct unbecoming an officer and gentleman.”
“Specification 1, Additional Charge: In that CAPTAIN MICHAEL C. BROWN, United States Air Force, 42d Medical Operations Squadron, Maxwell Air Force Base, Alabama, a married man, did, at or near Maxwell Air Force Base, Alabama, on divers occasions from on or about 1 June 1995 to on or about 29 March 1996, wrongfully and dishonorably persistently direct comments and questions of a personal or sexual nature to Captain [IT], a married woman not his wife, to wit: 'Have you ever had an affair?, ’ ‘You look like a size 4,’ 'You have a very good shape and look very good for your age,’ ‘Do you wear a one piece or two piece swim suit?,’ 'I bet you
*392 wear a two piece [swimsuit],' 'A patient told me I look good in my pants,’ ‘Are you happily married,’ ‘Do you get along with your husband,’ ‘Would you like to go out for lunch?,’ ‘Would you like to come over to my house?,’ and ‘Do women masturbate?,’ or words to that effect, that, under the circumstances, these comments and questions constituted conduct unbecoming an officer and gentleman."