Derrick JOHNSON, Petitioner.

v.

Michael W. MOORE, Respondent.

No. 8:02–cv–1003–T–23EAJ.

United States District Court,
M.D. Florida,
Tampa Division.

March 30, 2007.

Rochelle Anne Reback, Law Office of Rochelle A. Reback, Tampa, FL, for Petitioner.

John M. Klawikofsky, Office of the Attorney General, Tampa, FL, for Respondent.

### *ORDER*

MERRYDAY, District Judge.

Michael W. Moore moves (Doc. 56) to alter or amend the judgment. Although Moore's motion inexcusably fails to include pertinent record citations and asserts legal principles without citation of legal authority (in both instances shifting to the court the duty to search), this order addresses each ascertainable argument advanced by Moore in his motion:

### *HARMLESS ERROR—FIRST PART*

Moore first claims that the order fails to address "harmless error."

*Ross v. United States,* 289 F.3d 677, (11th Cir.2002), *reh'g and reh'g en banc denied,* 46 Fed.Appx. 960 (11th Cir.2002),

*cert. denied,* 537 U.S. 1113, 123 S.Ct. 944, 154 L.Ed.2d 787 (2003), authoritatively states the standard applicable to "harmless error" analysis in federal habeas corpus review of state convictions:

The parties dispute precisely what harmless-error standard is applicable in this case. In *Brecht v. Abrahamson,* 507 U.S. 619, 636–38, 113 S.Ct. 1710, 1721–22, 123 L.Ed.2d 353 (1993), the Supreme Court concluded that the appropriate standard for reviewing the harmlessness of a non-structural constitutional error on collateral review of a state court judgment is the standard enunciated in *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). Under that standard, a defendant is entitled to habeas relief when an error results in actual prejudice because it "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht,* 507 U.S. at 638, 113 S.Ct. at 1722. Ross, however, contends that the instructional error in this case should be evaluated under the harmless-beyond-a-reasonable-doubt standard of *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

. . . .

We conclude that . . . application of the *Brecht* standard to *Richardson[ v. U.S.,* 526 U.S. 813, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999)] error on collateral appeal is the appropriate approach. In this Circuit, we apply the *Brecht* harmless error standard to the habeas review of federal court convictions, as well as state court convictions. *See Vines v. United States,* 28 F.3d 1123, 1130 (11th Cir.1994).

289 F.3d at 682. Further, the Eleventh Circuit expounds the method by which the district court in a habeas corpus review arrives at a decision about the harmlessness of an error:

When reviewing the harmlessness of an error under the *Brecht* standard, "[i]f, when all is said and done, the [court's] conviction is sure that the error did not influence, or had but very slight effect, the verdict and the judgment should stand." *O'Neal v. McAninch,* 513 U.S. 432, 437, 115 S.Ct. 992, 995, 130 L.Ed.2d 947 (1995) (quoting *Kotteakos v. United States,* 328 U.S. 750, 764, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)). But if a federal court is "in grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict, that error is not harmless." *Smith v. Singletary,* 61 F.3d 815, 818–19 (11th Cir.1995) (quoting *O'Neal,* 513 U.S. at 436, 115 S.Ct. 992, 130 L.Ed.2d 947) (applying *Brecht* standard).

289 F.3d at 683. The *Kotteakos* standard applies to habeas review of all "trial errors" (but not "structural errors"), even those to which the Constitution requires a state court to apply the *Chapman* standard ("harmless beyond a reasonable doubt").

Did the state court's constitutional error during Derrick Johnson's trial have "a substantial and injurious effect or influence in determining the jury's verdict"? The opinion granting the writ of habeas corpus dedicates forty-three pages to a painstaking review of both fact and law, all of which is directed to answering this question with an emphatic "yes." The highlights are:

Page two of the order, which states:

[T]he sole and governing issue at trial was Johnson's claim of [the complainant's] consent [to sexual intercourse] in exchange for drugs . . . .

Pages three and four of the order, which state:

. . . (1) despite the representation that the assailant touched many items inside

the home, Johnson's fingerprints were not recovered from the alleged crime scene, either inside or outside the burglarized home; (2) despite testing, the bed sheets contained no hair or bodily fluid matching Johnson's, no bodily fluid matching the complainant's (even though she claimed she was menstruating at the time of the alleged rape), and no other physical evidence to support the rape allegation; and (3) despite the claim of a burglary, the police found no point of entry (all windows were securely protected with "burglar bars") and no evidence that a door had been forced.

Pages thirty-three, thirty-four, and thirty-five of the order, which state:

> At the moment that the trial judge confronted the proffered testimony of Pernell Davis, the outcome of the case was starkly contingent upon the single question of the complainant's credibility.... [T]he only evidence placing Johnson inside the residence and in the complainant's bed is the testimony of the complainant and the shaky, equivocal testimony of the complainant's brother.
>
> The complainant's credibility was manifestly the linchpin of the state's case. Establishing mendacity in her testimony about her sexual history and about her attitude toward drug usage would directly and crucially suggest mendacity in her testimony about her sexual encounter with Johnson. In this context, the trial judge considered Pernell Davis's proffered testimony....

Pages forty and forty-one, which discuss the trial judge's unaccountable ruling and explore the ruling's consequences:

> The inevitable followed in due course after the exclusion of Pernell Davis's testimony. The prosecution during summation pounded into the jury the testimony about the alleged rape, the alleged sexual inexperience, and the alleged abhorrence of drugs. Not content to argue from the admitted evidence, the prosecution pounded into the jury the absence of responsive evidence from Johnson, i.e., the absence of evidence establishing a history of meretricious sexual activity or drug use by the complainant.... The prosecutor argued audaciously and opportunistically, having procured exclusion on the basis of Florida's rape shield law of the exact evidence he boldly claimed was lacking.

Page forty-one, which concludes the analysis and characterizes the effect of this erroneous ruling:

> The trial of Derrick Johnson was deeply flawed, pointedly imbalanced, and fundamentally unfair, owing principally to denial of Johnson's well-established constitutional right to present a defense and establish his innocence.

■ Perhaps the order ought to have included "and not harmless" after "deeply flawed, pointedly imbalanced, and fundamentally unfair." Therefore, the order is amended to include "and not harmless" at that point on page forty-one. As expounded in the order at length and as is obvious to any disinterested observer, the unconstitutional exclusion of Pernell Davis's testimony, vital corroboration scheduled to occur at the close of the defense case as the final testimonial statement by the defense to the jury, "had a substantial and an injurious effect or influence in determining the jury's verdict," and the order is amended to so state on page forty-one.

### HARMLESS ERROR—SECOND PART

Moore argues that the trial court's exclusion of Pernell Davis's testimony is harmless because Derrick Johnson would receive a life sentence for either offense of conviction and because Pernell Davis's testimony pertains only to the rape and not to the burglary. This argument boldly ig-

nores the obvious but intimate factual nexus between the two crimes—sexual battery and burglary with assault or battery. At pages three and four, Johnson's (supplemental) response to Moore's motion to alter or amend the judgment emphatically disposes of Moore's claim:

> Here, in order for the State to convict the Petitioner of the 1st degree "burglary with assault or battery" under § 810.02(2)(a), and thereby subject him to a life sentence on this count of conviction, the State would also have had to prove the additional element that an assault or battery, or in this case, that the sexual battery as charged and identified in the Information, took place as part of the same criminal episode as the underlying burglary itself.
>
> This makes the question of whether the sexual battery even occurred as charged to be of critical relevance to the "burglary with assault or battery" charge as well. In other words, proof of the sexual battery, or conversely, competent evidence which impeached the proof of the sexual battery, was also of critical relevance to the 1st degree "burglary with assault or battery" conviction in this case, and the erroneous exclusion of the Davis testimony which prevented Petitioner from adequately developing his theory of defense to the charge of "sexual battery with threat of violence" was as equally "not harmless" to the burglary charge as "not harmless" to the sexual battery charge.
>
> Furthermore, if the jury had been allowed to hear the defense evidence and then determined that the State had not proved the "sexual battery with threat of violence" beyond a reasonable doubt as charged, then even if they had convicted the Petitioner of a different or lesser burglary, that burglary offense could have *at most* amounted only to the lesser 2d degree felony burglary with a maximum possible sentence of no more than fifteen (15) years under F.S. § 775.082(c).

Moore's second argument for "harmless error" is rejected for the reason stated by Johnson.

### THE PROFFER

■ Citing Section 90.104(1)(b), *Florida Statutes,* Moore claims that "Davis's testimony was not sufficiently proffered at trial" because "Davis did not personally testify at the proffer." Moore failed to assert this objection at any moment before the present motion to alter or amend. The prosecution lodged no objection to the proffer at the trial, the prosecution's appellate brief in Florida's district court of appeal included no objection to the proffer, and no earlier paper in this habeas corpus case preserves any objection to the sufficiency of Johnson's proffer of Davis's testimony. Any supposed defect in the proffer is waived.

However, no defect exists. Section 90.104(1)(b) states in pertinent part:

> A court may predicate error, set aside or reverse a judgment, or grant a new trial on the basis of admitted or excluded evidence when a substantial right of the party is adversely affected and:
>
> . . . .
>
> (b) When the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer of proof or was apparent from the context within which the questions were asked.

The statute requires an "offer of proof" of excluded evidence but specifies no particular form for the proffer. The statute requires only that the excluded evidence "was made known" to the court. The statute leaves to the trial court's assessment of the attendant circumstances the question whether to require a testimonial proffer (by questions from counsel and answers

from the witness under oath) or only a non-testimonial proffer (through a summary statement by counsel of the expected proposed testimony).\* As Professor Ehrhardt states in his frequently cited treatise on Florida evidence:

> The method of making the offer of proof is within the "court's" discretion. Although the usual manner in which the offer is made is by having the witness answer the question on the record out of the presence of the jury, an offer may also be made by including in the record a written statement of the anticipated answer or by a professional statement by counsel to the court disclosing the answer which is made on the record.

Charles W. Ehrhardt, *Florida Evidence* (2006), § 104.3, pp. 31–32.

This statement accords with the uniform experience of those participating in jury trials, either state or federal, either civil or criminal, and either as a lawyer or as a judge. As stated in *Holmes v. Bridgestone/Firestone, Inc.*, 891 So.2d 1188, 1191 (Fla. 4th DCA 2005):

> The traditional purpose of a proffer, or offer of proof, is to demonstrate to an appellate court a real error, not an imaginary or speculative one. Ehrhardt, *Florida Evidence*, § 104.3 (2002 ed.), citing *Jacobs v. Wainwright*, 450 So.2d 200 (Fla.1984); *Nava v. State*, 450 So.2d 606 (Fla. 4th DCA 1984). Although the safest practice would be to proffer the actual evidence, an oral proffer may be sufficient, particularly if there is no dispute as to what the evidence would have been. *O'Shea v. O'Shea*, 585 So.2d 405 (Fla. 1st DCA 1991). Whether a proffer is sufficient is within the trial court's

discretion. *Porro v. State*, 656 So.2d 587 (Fla. 3d DCA 1995).

■ The proffer by defense counsel of Pernell Davis's prospective testimony at Johnson's trial in the present case was detailed and encompassing, received by the trial court without reservation, and overheard by the prosecution without objection. All participants at trial and throughout the course of this action have understood with particularity the content of the proffered testimony. Defense counsel's proffer was not merely sufficient; it was exemplary. *See also* Henry P. Trawick, *Trawick's Florida Practice and Procedure*, § 22:10; Charles W. Ehrhardt, *Florida Evidence* (2006), § 104.3. No statute, rule, decision, or other authority in Florida (or elsewhere, apparently) requires a testimonial proffer that is neither offered by the testimony's proponent, demanded by the testimony's opponent, nor directed by the trial judge. As stated in *Strong v. Mercantile Trust Co., N.A.*, 816 F.2d 429 (8th Cir.1987), the form of any proffer is informed by the circumstances and decided by the trial court:

> The purpose of the offer of proof is to allow both the trial court and the appellate court on review to ascertain whether excluding the evidence caused any prejudice to the appellant.
>
> Counsel may accomplish this by stating with specificity what he or she anticipates will be the witness' testimony or, at the trial court's discretion, by putting the witness on the stand, outside the presence of the jury, and eliciting re-

---

\* Although he provided a detailed and comprehensive but non-testimonial proffer to the trial judge, Johnson's trial counsel advised the trial judge that Pernell Davis was present and offered a testimonial proffer from Davis, who was standing-by and prepared to testify. Johnson's counsel said to the trial judge during the argument about Davis's testimony, "I can give you an oral proffer on Mr. Davis, too. He's back there." Respondent's Exhibit 1, vol. IV, at 355. Neither the trial judge nor the prosecutor accepted this invitation for a testimonial proffer.

sponses in a question and answer format.

816 F.2d at 432 and n. 4.

Although lacking legal value, Moore's argument attacking for the first time Johnson's proffer provides a convenient mechanism for Moore, again for the first time, to attack Davis's credibility. Moore's statements about Davis's alleged history (the claimed felony conviction and the claim of felonies yet unprosecuted) introduce accusations that are both impertinent and entirely outside the record in this case. However, even if within the record and true, the accusations about Davis's history fail to distinguish him in the slightest measure from thousands of convicted felons summoned to the witness stand by a state or the United States in prosecutions literally every day. Moore's assertion that a convicted felon's testimony cannot influence a jury stands nakedly athwart the weighty history of testimony elicited by prosecutors, state and federal, from cooperating witnesses, informants, and codefendants of every species in American courts. Of course, unlike a state or the United States, Derrick Johnson is without the power to offer immunity, plea bargains, or sentence reductions—the common currency offered by law enforcement to induce favorable testimony by felonious witnesses. Everyone recognizes the risk of testimony from felons (and the risk of testimony from everyone else), some of whom are truthful and some of whom are not; the assessment of credibility rests with the jury, not with a federal judge on habeas review.

Moore's new objection to Johnson's proffer of Pernell Davis's testimony is denied because the argument was waived and because the argument is meritless, even if preserved.

## APPROPRIATE DEFERENCE

Moore next claims that the order "misapplied the AEDPA standard by not granting deference to the state court's application of the Florida Rape Shield." In fact the order ignores any challenge to the mere correctness, measured by state law, of the state court's application of Florida's rape shield law. Pages thirty-six and thirty-seven summarize and solidify the order's appropriate deference to the state court:

> But, rightly or wrongly, the trial judge (without explanation, except to say opaquely that "you haven't met the predicate required by the statute itself") found Pernell Davis's testimony entirely inadmissible by operation of Florida's rape shield law, the interpretation of which is exclusively a matter of state law for determination by Florida courts, which affirmed the trial court (and also failed to elaborate). Because the dubious merit of this interpretation of Florida's rape shield law properly evades federal review, the sole recurring question in deciding this petition for the writ of habeas corpus is whether Florida's interpretation and application of the rape shield law in this case was contrary to, or an unreasonable application of, controlling Supreme Court precedent, in particular *Washington, Chambers, Crane,* and related cases (and, as well, those cases applying these precedents in the Eleventh Circuit and the Supreme Court of Florida).

Moore's claim of insufficient deference is rejected.

## CHAMBERS v. MISSISSIPPI

Moore claims the order granting the writ depends upon a misunderstanding of *Chambers.* The district court's order reviews in detail several Supreme Court and other decisions and systematically establishes the unmistakable rule of constitu-

tional law that applies in this instance. Moore's objection is incorrect and rejected.

## CONCLUSION

Moore's motion to alter or amend the judgment (Doc. 56) is **DENIED**.