**UNITED STATES of America,
Plaintiff,**

v.

**Gary LEFKOWITZ, Defendant.**

**No. CR. 4–94–65(DSD),
No. CIV. 00–1967(DSD).**

United States District Court,
D. Minnesota.

Oct. 30, 2003.

Henry Joseph Shea, III, U.S. Attorney, Minneapolis, MN, Pro se.

Gary Lefkowitz, Federal Sandstone, MN, Pro se.

Daniel Martin Scott, Federal Public Defender, Minneapolis, MN, Pro se.

## ORDER

DOTY, District Judge.

This matter is before the court upon defendant's motion for relief from a sentence in a criminal case pursuant to 28 U.S.C. § 2255. For the following reasons, defendant's motion is denied.

## BACKGROUND

### I. Facts

Because the factual background is fully set forth in the record, a summary of the facts is sufficient for purposes of the present motion. Defendant and his company, Citi–Equity Group ("CEG"), built or developed low to moderate income housing complexes that purportedly qualified for low income housing tax credits. Defendant and CEG offered investment opportunities in limited partnerships ("PPMs") that would allow investors to claim the tax credits.

CEG contracted with builders to develop the housing projects. In most cases, the builders agreed to obtain initial construction financing and CEG agreed to develop permanent financing upon completion of each project.

The evidence adduced at trial showed that investors' funds were taken from accounts dedicated to the projects selected by the investors and placed in a common CEG account that was controlled by defendant. Investors' money was used to pay defendant's personal expenses and CEG's operating costs. If any money remained after that, it was spent on earlier projects whose funds were by then depleted. Evidence showed that nearly $10 million of the investors' funds went directly to defendant's personal expenses over a four-year period.

Defendant and CEG also offered First Secured Mortgages ("FSMs") to investors. These loans were then made to the limited partnerships that had invested in the housing developments to finance the construction. As with the builder-financed projects, it was expected that once construction was complete, CEG would obtain long-term financing for the FSM financed projects. The FSM documents stated that the funds were to be used solely in connection with the project specified by the investor. Nonetheless, FSM funds were commingled with other CEG accounts and

were used, most notably, to pay defendant's substantial personal expenses.

To reassure builders, limited partnership investors and FSM investors, defendant represented that permanent financing had been arranged for the projects when, in fact, it had not been finalized. Although defendant had obtained conditional offers of commitment from two banks, he misrepresented that all conditions had been met and that the financing was in place.

As defendant continued to skim from the investors' funds, it became necessary to use money from new investments to pay for older projects, despite investors' expectations that their investments were dedicated to the specific projects in which they had invested, with only a small portion retained for CEG's operating expenses.[1]

Not surprisingly, defendant's scheme eventually collapsed, as CEG's liabilities came to exceed its available funds by $25 to $30 million.[2] Builders and investors were left holding the empty bag. Defendant's scheme defrauded and harmed builders, investors, including financial institutions, the National Development Council and the Internal Revenue Service.

## II. Procedural History

On July 21, 1995, after a twenty-day trial, defendant was convicted by a jury of offenses including mail and wire fraud, income tax fraud, bankruptcy fraud, obstruction of justice and continuing financial crimes enterprise. On December 8, 1995, he was sentenced by the court to concurrent terms of imprisonment of 36, 60 and 293 months on the various counts of conviction. Defendant, who is himself a lawyer, brought multiple post-trial motions. These included several motions for a new trial, motions for judgments of acquittal in various forms, motions for dismissal of both individual counts of the indictment and alternatively, for dismissal of indictment entirely. Defendant also brought motions to disqualify the trial judge, the United States Attorney's Office for the District of Minnesota and the prosecuting assistant United States Attorney. The court denied defendant's motions.

Defendant filed notice of appeal on December 12, 1995.[3] On September 9, 1997, the United States Court of Appeals for the Eighth Circuit filed its opinion reversing the judgment of the district court on counts 1 and 30 of the superseding indictment, affirming the judgment on all other counts and remanding to the district court for amendment of the judgment and a determination of the need for re-sentencing.[4] On October 30, 1997, the district

---

1. While the partnership agreements indicated that idle investment funds could be loaned from one project to another and even to the general partner, investors were not informed that entire project investments could and were being transferred to uncompleted projects whose funds had been completely exhausted.

2. Defendant now argues that, while CEG's liabilities may have exceeded its cash on hand, its assets included receivables that would have covered its debts. The evidence at trial proved otherwise, and defendant's argument is belied by his own statement to concerned CEG employees that he could always raise more cash. The evidence showed, and the jury found, that defendant's activities amounted to little more than a highly sophisticated Ponzi scheme. See generally In re Armstrong, 291 F.3d 517, 520 n. 3 (8th Cir. 2002) (describing so-called Ponzi schemes).

3. See United States v. Lefkowitz, 125 F.3d 608 (8th Cir.1997) cert. denied, 523 U.S. 1079, 118 S.Ct. 1527, 140 L.Ed.2d 678 (1998) ("Lefkowitz I").

4. Count 1 of the superseding indictment charged defendant with mail fraud and count 30 charged him with wire fraud. The judgment was reversed with regard to these counts for insufficient evidence. See Lefkowitz I, 125 F.3d at 616–17.

court issued an amended judgment and order vacating the convictions and sentences on counts 1 and 30. The court determined that resentencing was unwarranted.

On November 13, 1997, defendant filed notice of appeal from the entry of the amended judgment and order of the district court denying re-sentencing. The Eighth Circuit affirmed the judgment of the district court in an unpublished per curiam opinion on August 9, 1999.[5] On April 20, 1998 and February 28, 2000, the United States Supreme Court denied defendant's petitions for certiorari.[6]

Defendant filed the first version of the present motion pursuant to 28 U.S.C. § 2255 on August 17, 2000. He filed a supplement to that motion on September 29, 2000. On November 7, 2000, defendant filed a third version of the motion captioned "First Amended § 2255 Motion." Also on November 7, 2000, the United States filed its answer and memorandum in opposition to defendant's § 2255 motion.[7]

On November 17, 2000, the court granted defendant's motion for leave to file a traverse to the government's answer. Defendant repeatedly sought and received extensions of time to file the traverse. Then, on May 9 and June 5, 2001, defendant filed a motion and supplemental motion for partial summary judgment on his § 2255 action.

After numerous motions and requests for extensions, defendant filed an initial traverse on August 8, 2001. Two days later, he filed a motion for new trial based on newly discovered evidence, pursuant to Fed.R.Crim.P. 33. Defendant then moved for and was granted another extension of time in which to file a traverse to the government's answer. On October 17, 2002, defendant filed a second traverse to the government's objection to his motion for relief under § 2255.[8]

## DISCUSSION

### I. Standards on a Motion Under 28 U.S.C. § 2255

■ The habeas corpus provisions set forth in 28 U.S.C. § 2255 provide prisoners a limited opportunity to bring collateral challenges to the constitutionality, legality or jurisdictional basis of federally imposed sentences. *See United States v. Addonizio,* 442 U.S. 178, 185, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979). The right of collateral review is an extraordinary remedy. *See Bousley v. United States,* 523 U.S. 614, 621, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). Therefore, § 2255 actions are limited by the preclusive effect of decisions resulting from prior direct appellate review and by the doctrine of procedural default. On one hand, claims which have been raised and decided on direct appeal are precluded from further litigation under § 2255. *See Bear Stops v. United States,*

---

**5.** *See United States v. Lefkowitz,* 187 F.3d 644 (8th Cir.1999) (per curiam), *cert. denied,* 528 U.S. 1190, 120 S.Ct. 1246, 146 L.Ed.2d 104 (2000) *leave to file petition for reh'g denied,* 529 U.S. 1125, 120 S.Ct. 2002, 146 L.Ed.2d 825 (2000) *("Lefkowitz II").*

**6.** *See Lefkowitz v. United States,* 523 U.S. 1079, 118 S.Ct. 1527, 140 L.Ed.2d 678 (1998); *Lefkowitz v. United States,* 528 U.S. 1190, 120 S.Ct. 1246, 146 L.Ed.2d 104 (2000) *leave to file petition for rehearing denied,* 529 U.S. 1125, 120 S.Ct. 2002, 146 L.Ed.2d 825 (2000).

**7.** It is apparent from the timing and content that the government's opposing memorandum addresses the original § 2255 motion and supplement, but not the amended § 2255 motion.

**8.** The court notes that defendant has filed dozens of other motions during the approximately eight years following his conviction. Only those motions relating to the issues raised in defendant's multiple § 2255 pleadings have been noted here.

339 F.3d 777, 780 (8th Cir.2003). On the other hand, issues that could have been, but were not, raised on direct appeal are waived and cannot be asserted for the first time in a collateral § 2255 action absent a showing of cause and actual prejudice, or a showing of actual innocence. *See United States v. Frady*, 456 U.S. 152, 167–68, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Swedzinski v. United States*, 160 F.3d 498, 500 (8th Cir.1998).

▌ Moreover, even where an error occurred, a conviction will not be overturned if that error is deemed to have been harmless. *See United States v. Barnhart*, 979 F.2d 647, 652 (8th Cir.1992). The harmless error standard is applied differently depending on whether or not the error touched on a constitutional right. *See United States v. Drummond*, 903 F.2d 1171, 1174 (8th Cir.1990). If a constitutional error was of a fundamental or structural dimension, reversal is automatic. *See id.* In most cases where a constitutional error is non-structural or non-fundamental, the *Chapman* standard is applied. *See Chapman v. California*, 386 U.S. 18, 22, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Under *Chapman*, non-structural constitutional errors are deemed harmless if it is clear beyond a reasonable doubt that the outcome would have been the same absent the error. *See Barnhart*, 979 F.2d at 652–53 (citing *Chapman*, 386 U.S. at 24, 87 S.Ct. 824). Moreover, if a non-structural constitutional error has been addressed in a prior forum, the more deferential *Brecht* harmless error standard is applied and the conviction will stand unless the error had a substantial or injurious effect on the verdict.[9] *See Barrett v. Acevedo*, 169 F.3d 1155, 1164 (8th Cir.1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 629–31, 113 S.Ct. 1710, 1717–18, 123 L.Ed.2d 353 (1993)). Errors that are non-jurisdictional or are of less than constitutional proportion are harmless unless they "had a 'substantial influence' on the outcome" or cause "'grave doubt' as to whether [they] had such an effect." *See Drummond*, 903 F.2d at 1174 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)).

## II. Defendant's Claims

▌ Defendant has framed the challenges to his sentence a number of different ways in his various motions. In addition to the original § 2255 motion, the supplement to the § 2255 motion and the first amended § 2255 motion, defendant filed several motions for a new trial, a motion and supplemental motion for partial summary judgment, along with two traverses[10] to the government's objection

---

**9.** The *Brecht* standard of review is most often applied after state courts have reviewed a prisoner's constitutional claims. *See Acevedo*, 169 F.3d at 1164.

**10.** The Advisory Committee Notes to Rule 5 of the Rules Governing § 2255 Proceedings state:

> There is nothing in § 2255 which corresponds to the § 2248 requirement of a traverse to the answer. Numerous cases have held that the government's answer and affidavits are not conclusive against the mov-

ant, and *if they raise disputed issues of fact,* a hearing must be held.

> \* \* \* \* \* \*

> None of [the cited] cases makes any mention of a traverse by the movant to the government's answer. As under Rule 5 of the § 2254 rules, there is no intention here that such a traverse be required, except under special circumstances.

28 U.S.C. § 2255, Rule 5, Rules Governing § 2255 Proceedings (internal citations omitted) (emphasis added).

The court notes, however, that the use of the traverse arose because the factual assertions in the government's return or answer to a state prisoner's habeas petition were considered at common law to be conclusive, and

to the original § 2255.[11] All told, defendant's motions and supporting memoranda purport to allege over sixty claims.[12] With supporting documentation and subsequent citations to supplemental authority, defendant's submissions number in the several thousands of pages. However, on close inspection, it is clear that the majority of defendant's claims are redundant.[13]

The court has carefully reviewed defendant's prolific submissions and has segregated the claims into the following groupings: (1) challenges to the continuing financial crimes enterprise charge in count 47, (2) challenges to the conduct of the prosecuting Assistant United States Attorney, (3) challenges to certain discretionary determinations, conclusions of law and other conduct of the district court, (4) claims of ineffective assistance of counsel, and (5) miscellaneous claims. The claims are addressed in that order.

## 1. Challenges to Count 47, Continuing Financial Crimes

Defendant was charged in count 47 of the superseding indictment with violating 18 U.S.C. § 225 by engaging in a continuing financial crimes enterprise. Section 225 criminalizes the organization, management or supervision of a continuing financial crimes enterprise that yields $5 million or more within a two year period. *See* 18 U.S.C. § 225. Subsection (b) of the statute defines a "continuing financial crimes enterprise" as a series of violations of certain statutes affecting a financial institution involving four or more persons acting in concert. 28 U.S.C. § 225(b).

Defendant submits a number of challenges to his conviction and resulting sentence on count 47. He asserts that once counts 1 and 30 were reversed it was no longer clear that the jurors unanimously agreed on which counts of conviction constituted a "continuing series." He also

later came to be viewed as prima facie valid, unless challenged by traverse. *See* 39A C.J.S. Habeas Corpus § 190 (2002). Thus, the purpose of the traverse was to preserve a defendant's objections to the factual assertions in the government's answer to the petition for habeas relief. *See* 71 C.J.S. Pleading § 184. That presumption of validity is no longer afforded to the assertions of fact in the government's answer. *See United States ex rel. Kendzierski v. Brantley*, 447 F.2d 806, 808 (7th Cir.1971). Moreover, in eliminating the requirement that state habeas petitioners file a traverse, Congress stated its intent "to create a more streamlined and manageable habeas corpus procedure." 28 foll. § 2254, Advisory Committee Notes to Rule 5 of the Rules Governing § 2254 Proceedings.

Believing that defendant's claims may have raised factual questions, the court granted defendant's motion to file a traverse to the government's answer. However, defendant's two submissions captioned "Traverse to Government's Answer" do not challenge the government's factual assertions. They simply restate defendant's claims and challenge the government's legal analysis. Because defendant's legal claims are more than sufficiently pleaded in his three § 2255 memoranda, as well as his motion for new trial and motion and supplemental motion for summary judgment, further briefing on the law is both unnecessary and contrary to the streamlined process envisioned by Congress. Therefore, the court will not address the legal arguments rehashed in defendant's first and second traverse.

**11.** Each of defendant's pleadings purports to incorporate the claims and arguments of its predecessors.

**12.** Defendant's second traverse alone refers to some twenty issues from the original § 2255 motion, seven from the supplement to the § 2255 motion and thirty-four from the first amended § 2255 motion, for a total of sixty-one purported issues.

**13.** For example, the majority of the claims alleged in defendant's third motion, entitled "First Amended § 2255 Petition," simply restate claims previously asserted, but begin the recitation of each claim with, "Mr. Lefkowitz' due process rights were violated when...", in an apparent attempt to constitutionalize the claims.

argues that the remaining counts did not constitute a series nor yield $5 million or more. Defendant also contends that the court's instruction to the jury erroneously allowed it to find that he acted in concert with three or more persons without finding the requisite conspiratorial intent. Defendant also argues that the government failed to prove that defendant's fraudulent statements were material, therefore eliminating the counts supporting the jury's finding of a series of violations under § 225. Defendant further asserts that the indictment failed to list the specific elements of a § 225 violation and that the government failed to prove that he personally received $5 million or more from the illegal scheme. He additionally contends that because some of the mail fraud activities on which the § 225 count was based occurred before § 225 became law, the conviction violated the ex post facto clause. Defendant also alleges that the government failed to prove that a financial institution was injured and that the government's case was ultimately based on fraud related to FSM VIII but that no losses were proven attributable to that project. Defendant alleges that the jury should have been required to make a specific finding that he derived $5 million within a two-year period. Finally, defendant argues that the decisions of the United States Supreme Court in *Jones* and *Apprendi* require that the sentence on count 47 be vacated. *See Jones v. United States,* 526 U.S. 227, 243 n. 6, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999); *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

The vast majority of these claims are not appropriately raised in a § 2255 motion either because they were raised on direct appeal, or because they could have been raised and were not. *See Bear Stops,* 339 F.3d at 780; *Frady,* 456 U.S. at 167–68, 102 S.Ct. 1584. On direct appeal, the Court of Appeals held that the evidence showed that defendant received $5 million or more in a two-year period, that financial institutions were affected, that there was an overall scheme to defraud and that numerous CEG employees acted in concert with defendant. *See Lefkowitz I,* 125 F.3d at 618. The Court of Appeals also held that, with the exceptions of counts 1 and 30, each of the mail and wire fraud counts was sufficiently supported by the evidence. *See id.* Finally, contrary to defendant's assertions, in upholding all but two of the fraud counts, the Court of Appeals necessarily determined that the jury found the requisite materiality, because the jury was instructed on that element. These issues are precluded from collateral review under § 2255. *See Bear Stops,* 339 F.3d at 780.

█ Defendant's claims that the indictment failed to enumerate the elements of a § 225 offense and that the conviction violated the ex post facto clause because it included acts of fraud occurring before § 225 was enacted were apparently not raised on direct appeal. However, because defendant has not shown cause for failing to raise these issues on direct appeal, they are procedurally defaulted. *See Frady,* 456 U.S. at 167–68, 102 S.Ct. 1584; *United States v. Moss,* 252 F.3d 993, 1001 (8th Cir.2001). Moreover, although a violation the ex post facto clause would touch on defendant's constitutional rights, no such violation occurred in this instance. "In the case of continuing offenses ... the Ex Post Facto clause is not violated by application of a statute to an enterprise that began prior to, but continued after, the effective date of [the statute]." *United States v. Paton,* 110 F.3d 562, 565 (8th Cir.1997) (quoting *United States v. Hernandez,* 972 F.2d 885, 888 (8th Cir.1992)); *see also United States v. Harris,* 79 F.3d 223, 230 (2nd Cir.1996) (holding same on challenge to conviction under 18 U.S.C. § 225). Defendant's argument is without merit.

Defendant's other challenges to the § 225 conviction focus on the effect of the reversal of counts 1 and 30 on the unanimity of the jury's finding of a series of violations and on its finding that the offense yielded an aggregate of $5 million or more.

■ Defendant contends that, after the United States Supreme Court's 1999 decision in *Richardson*, it became necessary for juries to unanimously agree on which violations constituted the "series" called for by § 225. *See Richardson v. United States,* 526 U.S. 813, 818, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999). *Richardson* interpreted the phrase "continuing series of violations" in 21 U.S.C. § 848(a), which deals with continuing criminal drug enterprises. *See Richardson,* 526 U.S. at 818, 119 S.Ct. 1707. Defendant argues that the same reasoning and requirement should apply to § 225. While most courts have given *Richardson* retroactive effect, no court has applied its unanimity requirement to 18 U.S.C. § 225. Moreover, the majority of courts considering *Richardson* claims in § 2255 motions to vacate continuing drug enterprise convictions have deemed the unanimity requirement nonstructural, applied harmless error review and denied habeas relief. *See Ross v. United States,* 289 F.3d 677, 683–84 (11th Cir.2002); *Santana–Madera v. United States,* 260 F.3d 133, 139–40 (2nd Cir. 2001); *Lanier v. United States,* 220 F.3d 833, 838–39 (7th Cir.2000); *United States v. Brown,* 202 F.3d 691, 699 (4th Cir.2000); *United States v. Long,* 190 F.3d 471, 476 n. 3 (6th Cir.1999); *United States v. Escobar–de Jesus,* 187 F.3d 148, 161–62 (1st Cir.1999). At least one court has held that a *Richardson* claim was procedurally defaulted and that the lack of a unanimity instruction to the jury did not prejudice

the defendant so as to overcome the default. *See United States v. Lopez,* 248 F.3d 427, 433–34 (5th Cir.2001). Under either approach, defendant's *Richardson* claim fails.

Even if *Richardson* does apply to § 225, which is far from certain, and the court's failure to require juror unanimity was error, that error was harmless under *Chapman* if it is clear beyond a reasonable doubt that, absent the error, the outcome would have been the same. *See Chapman,* 386 U.S. at 24, 87 S.Ct. 824. Applied here, the question is whether requiring juror unanimity might have changed the verdict on count 47. Because the Court of Appeals held that the evidence showed "a single massive scheme to defraud investors, lenders, builders, and governments," the jurors' unanimous verdict on all counts of mail and wire fraud make it clear beyond a reasonable doubt that a unanimity instruction would not have changed the outcome. *Lefkowitz I,* 125 F.3d at 614. The reversal of counts 1 and 30 is irrelevant because the entire enterprise was a single scheme constituting the requisite series of offenses. Such error, if it was error at all, was harmless and defendant's argument must fail.

Defendant's assertion that it was not proven that he received $5 million from a series of wire or mail fraud violations affecting a financial institution similarly fails. Defendant creatively parses the wire and mail fraud counts, claiming that counts 9, 26, 28 and 29 did not affect a financial institution and that counts 20 and 22–25 relate only to FSM VI, which did not yield receipts of $5 million or more. The argument fails for at least two reasons. First, defendant raised the same claim in his second direct appeal. Thus, it is precluded.[14] *See Bear Stops,* 339 F.3d at 780.

14. For the same reason, defendant's other attacks on the various fraud counts must fail. His arguments based on the Bespeaks Cau-

tion doctrine, reliance and lack of proof of a scheme to defraud either were or could have

Second, the predicate offences were part of a single massive scheme to defraud and several financial institutions were affected. *See Lefkowitz I*, 125 F.3d at 614. Defendant's attempt to recast the wire and mail fraud counts as divisible, independent schemes, is unavailing.

■ Defendant's challenge under *Jones* and *Apprendi* fails for similar reasons. Defendant cites *Jones* for the proposition that "any fact that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." *Jones*, 526 U.S. at 243 n. 6, 119 S.Ct. 1215. First, for the reasons cited in *United States v. Moss*, 252 F.3d 993, 996 (8th Cir.2001), the court does not believe *Jones* has retroactive effect over collateral habeas proceedings. Further, *Jones* has no application here in any event.

■ Defendant claims that because counts 1 and 30 were reversed, the $5 million element of § 225 was not proven and yet that fact increased the maximum penalty he faced from five years for mail or wire fraud to ten years to life under § 225. There are several flaws in that assertion, not the least of which is the holding in *Lefkowitz I* that the $5 million yield was proven at trial. *See Lefkowitz I*, 125 F.3d at 618. Further, *Jones* is inapposite because § 225 is not susceptible to *Jones* analysis. The carjacking statute at issue in *Jones* carries differing maximum penalties based on certain enhancing conduct. *See* 18 U.S.C. § 2119; *Jones*, 526 U.S. at 227, 119 S.Ct. 1215. Section 225,

on the other hand, provides only one penalty. *Jones* did not address different penalties for different statutes, but different penalties within a particular statute. *See Jones*, 526 U.S. at 227, 119 S.Ct. 1215. Here, defendant was charged with and convicted of separate crimes and sentenced according to the statutory sentencing provisions of each. Contrary to defendant's assertion, there was no "fact that increased the maximum penalty for a crime," but rather facts that proved the commission of different crimes with different penalties.

■ Defendant's *Apprendi* argument similarly fails. First, the Eighth Circuit has declined to apply *Apprendi* retroactively to collateral habeas proceedings. *See Moss*, 252 F.3d at 996. Moreover, even if it were to apply retroactively, *Apprendi* reiterates that "any fact that increases the penalty for a crime *beyond the prescribed statutory maximum* must be submitted to a jury and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348 (emphasis added). Defendant was sentenced below, not beyond, the statutory maximum prescribed by § 225. Thus, by its own terms, *Apprendi* does not apply.[15]

## 2. Challenges to the Conduct of the Prosecutor

■ These challenges assert misconduct in the prosecution of the case. Defendant charges the prosecutor with improper ex parte contact with employees and former employees of CEG, interfering with

been raised on direct appeal and are therefore barred. *See Bear Stops*, 339 F.3d at 780; *Frady*, 456 U.S. at 167–68, 102 S.Ct. 1584.

**15.** The failure to bring an "*Apprendi*-like claim" has also been considered and rejected as a basis for a claim of ineffective assistance of counsel. *See Brown v. United States*, 311 F.3d 875, 878 (8th Cir.2002). The *Brown*

panel held that failure to anticipate *Apprendi* did not constitute ineffective assistance. *See id.* Additionally, because *Apprendi* does not apply on the facts and circumstances of this case, defendant could not possibly show he was prejudiced by counsel's failure to make an *Apprendi*-like argument. *See Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

and intimidating witnesses, knowing use of perjured testimony, violating the attorney-client privilege rules, making knowing false statements to the jury, judge and defense counsel, making improper statements in closing argument and failing to make disclosures required by *Brady*, the Jencks Act of 1957 and *Giglio*. *See Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *Goldberg v. United States*, 425 U.S. 94, 98, 96 S.Ct. 1338, 47 L.Ed.2d 603 (1976); *Giglio v. United States*, 405 U.S. 150, 153–55, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

Defendant failed to raise these challenges on direct appeal and he now offers no cause for that failure. The claims are not based on newly-discovered evidence or intervening changes of law. Therefore, they are procedurally defaulted. *See Frady*, 456 U.S. at 167–68, 102 S.Ct. 1584.

### 3. Challenges to Determinations of the Trial Court

Defendant asserts that the trial court erred by denying him a hearing on re-sentencing following remand and denying him court-appointed counsel on appeal. He also claims the court erred when it admitted testimony that defendant "must have known …," that he is a "liar," that he was involved in financial disputes more than ten years prior to the offenses of conviction and that he had a girlfriend. Defendant also objects to the admission of testimonial evidence regarding the intent of the language in the PPM agreements and pertaining to defendant's failure to disclose a State of California bar sanction. He further challenges the court's denial of a requested continuance [16] and of defendant's request to review a summary of the government's accounting analysis. Defendant also contends that the court erred by

permitting the trial to go forward after further funding for his expert witnesses was discontinued, by denying defense counsel's motion to withdraw and by conditioning appointment of counsel on defendant's deposit of $250,000.

Many of these claims were raised on direct appeal and are now precluded from habeas review. In *Lefkowitz I*, the Court of Appeals remanded to the district court for entry of an amended judgment and consideration of the need for re-sentencing. *See Lefkowitz I*, 125 F.3d at 621. Defendant appealed the district court's entry of the amended judgment without re-sentencing and the Court of Appeals affirmed the district court. *See Lefkowitz II*, 187 F.3d at 644. As for the district court's denial of appointment of counsel on appeal, the Court of Appeals also denied defendant's motion for appointment of counsel on appeal.

Defendant's challenges to evidentiary and admissibility determinations by the court are either procedurally defaulted or precluded by his previous appeals. *See Bear Stops*, 339 F.3d at 780; *Frady*, 456 U.S. at 167–68, 102 S.Ct. 1584. The same is true of the court's denial of defense counsel's motion to withdraw and the court's conditioning of appointment of counsel on deposit of a security.

■ Defendant's assertion that the trial court denied him due process by proceeding to trial after the Court of Appeals discontinued funding for defense experts was raised on direct appeal and is precluded. *See Bear Stops*, 339 F.3d at 780. Further more, the argument is without merit. Defendant was given more than $169,000 for defense experts, over three times the amount originally authorized.

---

**16.** Defendant's motion for a continuance was granted, but he was given less time than he requested. (Order of May 1, 1995.)

Moreover, defendant was subsequently determined not to have been qualified for expert funds in the first place. (Order of January 11, 1996.) Thus, defendant did not suffer a deprivation of a right.

### 4. Claims of Ineffective Assistance of Counsel

Defendant claims that he received ineffective counsel at trial, sentencing and on appeal. A summary listing of the alleged deficiencies at trial includes: failure to review all government documents, failure to understand the issues, failure to interview or subpoena certain witnesses, failure to develop a strategy of the defense, failure to completely cross-examine some witnesses and failure to seek an instruction regarding materiality. Defendant also alleges that trial counsel suffered a mental breakdown at some point after trial and may have been impaired during the trial. Counsel at sentencing allegedly failed to submit a loss calculation to the probation officer, to review a draft presentence investigation report with defendant, to properly advise defendant of the risk of proceeding to trial and to timely deliver all files to subsequent counsel. On appeal, counsel allegedly failed to review the entire trial transcript and failed to raise arguments regarding jury instructions, proof of action in concert, materiality and unanimity.

 Claims of ineffective assistance of counsel are appropriately raised in a § 2255 habeas action. *See United States v. Stevens*, 149 F.3d 747, 748 (8th Cir. 1998). Further, such claims are not procedurally defaulted if not first brought on direct appeal. *See Massaro v. United States*, 538 U.S. 500, 123 S.Ct. 1690, 1696, 155 L.Ed.2d 714 (2003). To establish a claim of ineffective assistance of counsel, petitioner must meet both prongs of the test set out in *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, petitioner must show that counsel's performance was so deficient that it fell below the level of representation guaranteed by the Sixth Amendment. *See id.* at 687, 104 S.Ct. 2052. Second, petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 694, 104 S.Ct. 2052. Thus, in order to grant petitioner's motion, the court must find that petitioner would have prevailed on the issues had they been properly raised by his attorney. *See Kitt v. Clarke*, 931 F.2d 1246, 1249 (8th Cir. 1991). Because there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," the court must review counsel's performance with deference. *See Strickland*, 466 U.S. at 689, 104 S.Ct. 2052; *Bussard v. Lockhart*, 32 F.3d 322, 324 (8th Cir.1994).

The court has carefully reviewed each of defendant's allegations and finds they are contradicted by the record and by the court's own observations of counsel's performance throughout the proceedings. Given defendant's intelligence, education, business experience and the fact that he is a lawyer, he is far more qualified to participate in his defense than is the typical defendant. That fact is further borne out in the many pro se pleadings filed by defendant, all of which reflect defendant's legal skills and keen intellect. It was apparent to the court that defendant not only participated in preparing and presenting his defense, he fully controlled the process. The court also recalls that defendant was granted over $316,000 for accounting experts, private investigators and other defense costs. With all these in mind, the court views defendant's ineffective assistance of counsel claims with a degree of skepticism.

The court observed defendant's counsel prior to and during trial and found the representation well within the "prevailing professional norms." *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052. Trial counsel made numerous pretrial motions, cross-examined key government witnesses, put on witnesses for the defense and developed and presented a coherent theory of the defense. Counsel performed admirably in light of the strength of the government's evidence.

■ If the court did have any doubts about the quality of representation defendant received, which it does not, defendant has not and cannot show that he was prejudiced by trial counsel's performance, because the relevant, probative and admissible evidence of defendant's guilt was overwhelming. Where the evidence of guilt is overwhelming, there is no reasonable probability that, but for mistakes of counsel, the outcome would have been different. *See Singleton v. Lockhart*, 871 F.2d 1395, 1400 (8th Cir.1989).

The same is true of defendant's allegations of ineffective assistance pre- and post-trial. Performance of counsel in plea negotiations is also reviewed under the two-part *Strickland* test. See *Stevens*, 149 F.3d at 748. (citing *Engelen v. United States*, 68 F.3d 238, 241 (8th Cir.1995)). Like the defendant here, Engelen argued that because his attorney failed to inform him about the sentencing guidelines and the statutory minimum sentence, he chose not to accept the government's plea offer. *See Engelen*, 68 F.3d at 240. The Court of Appeals affirmed the district court's denial of Engelen's habeas motion because Engelen failed to show that, "but for his counsel's advice, he would have accepted the plea." *Id.* at 241. Here, defendant insisted on his innocence during the trial and long after, as evidenced by his many motions for new trial, for judgment as a matter of law, for summary judgment and for habeas relief.

■ It is a defendant's absolute right to plead not guilty and to persist in that plea. *See generally Estelle v. Williams*, 425 U.S. 501, 503, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976) (discussing right to presumption of innocence and government's burden of proof at trial). However, the fact that a defendant later regrets foregoing a plea offer and proceeding to trial is not evidence of ineffective assistance of counsel. Likewise, the assertion that appellate counsel failed to raise every possible challenge on appeal, even if true, does not constitute ineffective assistance. *See Blair v. Armontrout*, 976 F.2d 1130, 1139 (8th Cir.1992). For these reasons, the court denies defendant's motion for § 2255 habeas relief on the basis of ineffective assistance of counsel.

### 5. Other Miscellaneous Claims

Defendant also contends that there was no proof that he obstructed justice, that unissued tax credits are property, that he filed false tax returns or that he made false statements in a bankruptcy proceeding. Finally, defendant asserts that the evidence of his guilt was at best equivocal and fell far short of proof beyond a reasonable doubt.

■ Defendant challenged the obstruction, tax and bankruptcy fraud counts on direct appeal and lost. *See Lefkowitz I*, 125 F.3d at 618–20. The Court of Appeals found sufficient evidence to uphold each of the counts of conviction. *See id.* at 612–21. These claims are precluded from habeas review. *See Bear Stops*, 339 F.3d at 780. Defendant offers no cause for failing to bring the claim that unissued tax credits were not proven to be property within the meaning of the fraud statutes. Therefore, that claim is procedurally defaulted. *See Frady*, 456 U.S. at 167–68, 102 S.Ct. 1584.

Finally defendant's contention that the proof in the case was equivocal is contrary to both the law of habeas corpus proceedings and the record in this case. Challenges to the sufficiency of the evidence must be raised in direct appeal and are not the proper subject of collateral review. *See Weaver v. United States*, 418 F.2d 475, 476 (1969). In light of the jury's verdict and the holdings of the Eighth Circuit in *Lefkowitz I & Lefkowitz II*, defendant's challenge to the weight of the evidence deserves no further discussion.

### III. Defendant's Request for an Evidentiary Hearing

■ Defendant has requested a hearing on issues pertaining to counsel's preparedness for trial. The need for an evidentiary hearing on a motion for habeas relief is within the discretion of the district court. *See Delgado v. United States*, 162 F.3d 981, 983 (8th Cir.1998). Where the habeas petitioner's claims are "contradicted by the record, inherently incredible or conclusions rather than statements of fact," no evidentiary hearing is necessary. *Id.* (quoting *Engelen*, 68 F.3d at 240). Moreover, when the motion, files and records of the case conclusively show that habeas relief is unavailable, the court is not required to grant a hearing. *See* 18 U.S.C. § 2255. Therefore, defendant's request for an evidentiary hearing is denied.

### CONCLUSION

Based on a careful review of the files, records and proceedings in the matter and for the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. Defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 [Doc. No. 384] is denied.

2. Defendant's motion to proceed in forma pauperis on § 2255 motion [Doc. No. 383] is denied as moot.

3. Defendant's motion for waiver of Local Rule 7.1 [Doc. No. 387] is denied as moot.

4. Defendant's motion for leave to amend § 2255 motion [Doc. No. 388] is denied as moot.

5. Defendant's motion to vacate order to show cause issued by government [Doc. No. 395] is denied as moot.

6. Defendant's motion for extension of time to respond to government's opposition to motion for temporary restraining order [Doc. No. 440] is denied as moot.

7. Defendant's motion for partial summary judgment [Doc. No. 452] is denied as moot.

8. Defendant's motion for discovery [Doc. No. 454] is denied as moot.

9. Defendant's motion for issuance of writ of habeas corpus ad testificandum [Doc. No. 457] is denied as moot.

10. Defendant's motion for partial summary judgment [Doc. No. 460] is denied as moot.