Filed 7/10/25 (unmodified opn. attached)

CERTIFIED FOR PARTIAL PUBLICATION*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br>v.<br><br>MATTHEW JESSE MUNOZ,<br><br>    Defendant and Appellant. | A168292<br><br>(Alameda County<br>Super. Ct. No.<br>17CR023663B)<br><br>**ORDER MODIFYING OPINION AND DENYING REHEARING [NO CHANGE IN JUDGMENT]** |

**BY THE COURT:[1]**

It is ordered that the opinion filed herein on June 24, 2025, and certified for partial publication, be modified as follows:

1. The last paragraph commencing at the bottom of page 18 with "In his reply" and ending at the top of page 19 with "establish error" is deleted and replaced with the following paragraph:

In his reply brief, Munoz argues that his silence at the formation of the conspiracy to kill Baby D was enough to support a conclusion that he

---

* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part
[1] Before Jackson, P.J., Simons, J., Chou, J.

1

participated in this second conspiracy. He argues that he was conducting gang business on the call and a rational juror could conclude that Munoz's silence constituted his approval or adoption of Porter's animus against Baby D and their conspiratorial agreement. We disagree. No juror would reasonably conclude from the evidence that appellant was involved in more than one conspiracy, and Munoz provides no legal authority substantiating his position. He therefore fails to establish error.

The modification effects no change in the judgment.

The court has considered the petition for rehearing filed by appellant on July 8, 2025. Appellant's petition for rehearing is denied.


CHOU, J.


WE CONCUR.


JACKSON, P.J.
BURNS, J.


*People v. Matthew Jesse Munoz* (A168292)

A168292/*People v. Matthew Jesse Munoz*

Trial Court:        Superior Court of the County of Alameda

Trial Judge:        Michael J. Gaffey

Counsel:        Mark David Greenberg, under appointment by the Court of Appeal, for Defendant and Appellant.

        Rob Bonta, Attorney General, Lance E. Winters and Jeffrey M. Laurence, Assistant Attorneys General, Eric D. Share, Brady Baldwin and Cara M. Newlon, Deputy Attorneys General, for Plaintiff and Respondent.

Filed: 6/24/25 (unmodified version)

**CERTIFIED FOR PARTIAL PUBLICATION***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br>　　　Plaintiff and Respondent,<br>v.<br>MATTHEW JESSE MUNOZ,<br>　　　Defendant and Appellant. | A168292<br><br>(Alameda County<br>Super. Ct. No. 17CR023663B) |

Defendant Matthew Jesse Munoz appeals from a judgment of conviction and sentence imposed after a jury found him guilty of conspiracy to commit murder (Pen. Code, §§ 182, 187).[2]  He contends that the trial court erred by instructing the jurors, pursuant to CALCRIM No. 563, that they need not unanimously agree on the specific overt act Munoz committed in furtherance of the conspiracy so long as they unanimously agreed that some overt act was committed in furtherance of the conspiracy.  He further argues that the absence of an unanimity requirement as to a specific overt act rendered section 184 unconstitutionally vague as applied to him.  In addition, Munoz argues that the court erred by failing to instruct sua sponte that the jury would have to agree unanimously on which agreement formed the basis

---

　　　* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II.C and II.D.

　　　[2] Unless otherwise indicated, all statutory references are to the Penal Code.

1

of the conspiracy, and that the cumulative prejudice from the errors mandates reversal.

We will affirm the judgment.  CALCRIM No. 563 reflects the long-standing precedent of the California Supreme Court, and the cases cited by Munoz do not establish that the instruction violates the Sixth Amendment of the United States Constitution.  Nor does Munoz demonstrate that section 184 is vague as applied to him.  Finally, the trial court was not obligated to give a unanimity instruction on the agreement element of conspiracy because there was evidence of only one agreement in which Munoz was involved.  Because the court did not err, there was no cumulative prejudicial error.

## I.  FACTS AND PROCEDURAL HISTORY

In August 2022, an amended Information charged Munoz and others with conspiracy to commit murder (§§ 182, subd. (a)(1), 187).  The matter proceeded to a trial by jury.

### A.  Trial Evidence

To investigate a series of crimes, Hayward police obtained a warrant to intercept the text messages and phone calls of suspects including Humberto Villegas.  Police thereby uncovered a conspiracy that began during a phone call around 4:00 p.m. on January 30, 2017, between Villegas and Munoz.

In that phone conversation, Munoz stated that he had sent a screenshot to Villegas about "shit . . . on the 2nd."  The screenshot was apparently a flyer for a welcome home party for "Moochie" (Earl M.) that was planned for February 2, 2017, at the Fog Line Bar.

Shortly after Munoz mentioned the screenshot, he told Villegas in the same phone call, "Yeah bro tell them little n[]s tear that whole spot up n[].  I

2

don't give a fuck about nun of that."[3]  According to police, by "tear that whole spot up," Munoz meant, "[s]hoot it all up."  Villegas responded, "Yeah I'ma see, yeah I already told ([i]naudible)."  The target of the shooting was "Slugg," whose given name is Douglas Bagsaw.  Munoz repeatedly mentioned Slugg and said that "the n[]s from [another gang] wanna kill that n[] too."

Over the next several days, police intercepted more phone calls about the proposed shooting.  For example, several hours after the conversation between Villegas and Munoz, police intercepted a call between Villegas and Dezmon Wren.  When Wren said, "that n[] Slug[g] is hella gay," Villegas responded, "He got a welcome home party with someone.  So they want him toasted."  "The homie Mickey does," Villegas added, using Munoz's nickname, "Mickey."  Wren said, "They want him on a shirt," and Villegas confirmed, "They want him on a shirt," referring to the practice of putting a gang member's picture on a t-shirt when the gang member was killed.  On another call that included Michael Porter, Porter told Villegas, "Feel me if Baby D there too n[], tag that bitch ass n[] too."  Villegas said, "Yeah, I don't like that n[] either.  Baby D, I'll tag that n[] too."

On February 2, 2017, Munoz called Villegas at 6:15 p.m., a few hours before the event at the Fog Line Bar was to begin.  Munoz asked, "You all n[] ready to go or what?"  Villegas replied, "Yeah we barely[—]we been Westside living all day.  We be in the west all day.  We be right here, right down the street from there.  We for sure going to show up over there."  Later during that call, Munoz said, "N[], I want you all n[]s to air that motherfucker out n[], straight up."  Munoz told Villegas, "its like a performance inside bruh.

---

[3] We set forth the text messages and phone conversations as they appear in the record, regardless of punctuation, spelling, and profanity.  We substitute "n[]" for a word that is used derogatorily of African Americans.

They gonna perform inside. ([L]aughing[.]) You feel me, but I know, that's what I'm saying, that's why I wanted you all to go by 8. Cause I know around 8 o'clock there's gonna be n[]s outside cause of the performance and all that little shit." Villegas said, "Alright, I'm gonna go peep the scene right now then cause I'm already in the west already. I'm gonna call you right back." He reiterated, "I'm by myself right now, but I'm gonna pass by there."

After Villegas indicated that he was going to pass by the Fog Line Bar, police checked a tracking device that they had placed on a car he was known to drive, which was registered to his mother. The tracking data showed the car leaving Dunn Road, where Villegas frequented a house, and traveling around the Fog Line Bar before returning to Dunn Road.

At 7:30 p.m., about 15 minutes after Villegas and Munoz last spoke, Villegas spoke with Munoz again. He told Munoz, "That shit was dry as fuck right now" and "there was no black people or nothing so just, like white people." Munoz told Villegas, "the flyer says 9 o'clock to 1 AM. They supposed to do food, music, and fun. Live performance by yadi, yadi, yadi, yah."

After discussing other topics, Munoz and Villegas had the following exchange: "[Villegas:] (Inaudible) [Y]ou want me to slither up on over there in a bit and let you know what's up. [¶] [Munoz:] Yeah bro fuckin ahh . . . [¶] [Porter:] Wait till 9[.] [¶] [Munoz:] [W]ait until 9, fuck it. [¶] [Villegas:] Bro, I literally be right down the street from this area so, you know, right down the street from where I'm at right now. [¶] [Munoz:] Yeah just wait until 9, bro, n[], and take a couple of the little n[]s over there bro and have them n[]s walk inside of that motherfucker bro, and air that mother fucker out n[]. [¶] [Villegas:] Like that one movie where they throw a grenade in there (inaudible)[.] [¶] [Munoz:] Yeah n[] you can do it like old school, ugh, old

4

school Goodfellas and shit, where those n[]s walked in, walked up and shit and just lit some shit up. [¶] [Villegas:] Just dome em on time, Pow!, and walk out. There's hella cameras right there (inaudible). [¶] [Munoz:] Fuck it n[], you guys gotta come from like, n[], a block or down something, walkin or something, ski mask up n[ ], you gonna be all right, n[]. [¶] [Villegas:] (Inaudible) [P]edal there bike and hop in the car after. (Laughter) [¶] [Munoz:] Straight up. [¶] [Villegas:] (Inaudible) I'm see what's up right now and then I'm gonna tap in with you."

The police, who were listening to the call, dispatched marked police cars to the area "to deter anything that might be coming up" and to conduct surveillance.

At 8:54 p.m., Villegas texted Munoz: "Ima wiggle by rn." Around 9:10 or 9:20 p.m., Detective Manuel Troche saw the car Villegas was known to drive circling the Fog Line Bar. Later that night, the detective saw the car at Villegas's home.[4]

At 9:29 p.m., Villegas messaged Munoz, "There cops across the st," and "I'm lookn for his whip we steaking out rn." Munoz responded, "N[]s prolly tryna show up a Lil late to make an entrance they posted on ig to see who's going they gone fasho be up there." At 9:30 p.m., Villegas texted, "Yee I'm posted here smoking down the way." A minute later, he texted, "Lookn for yellow boy [(Bagsaw)]."

Around this same time, Munoz had numerous phone calls unrelated to the conspiracy, including calls at 8:57 p.m., 8:58 p.m., 8:59 p.m., 9:04 p.m., 9:07 p.m., 9:08 p.m., 9:12 p.m., 9:20 p.m., and 9:39 p.m. On the 8:59 p.m. call,

_____

[4] A patrol officer dispatched to the Fog Line Bar had been briefed on the investigation at about 8:15 p.m. but was not given information about Villegas's car. When asked later, he did not recall seeing a car that looked like it drive by between 9:00 p.m. and 9:30 p.m.

he spoke with someone who apparently wanted to buy drugs, and he implied that he could not meet that person because his car was not starting. On the 9:39 p.m. call, he told someone that he was smoking near his home.

Two days later, Munoz and Villegas spoke on the phone. Villegas told Munoz that "there was cops parked across the street and hella shit." He explained, "The first time, when I passed, when I passed the first time it was hella dry. Then when I passed the second time around like 9:30 ya I seen, that's when I seen the boys and then it looked like and I seen, like, black people, like, walking in but I couldn't tell who—but it wasn't him for sure cause I seen what he was wearing and shit."

At trial, the prosecutor contended that these acts and communications between January 30 and February 2, 2017, were overt acts taken by the conspirators to effect an agreement by Munoz and Villegas to murder Bagsaw. The defense denied one of the acts—that Villegas drove by the Fog Line Bar and Grill—and asserted that he was merely pretending to act out a crime that he did not intend to commit. The defense further argued that the communications were mere planning activity inherent in the formation of the agreement.

B. <u>Jury Verdict and Sentence</u>

The jury found Munoz guilty of conspiracy to commit murder as charged. The trial court imposed a sentence of 25 years to life in state prison. Munoz filed a timely notice of appeal.

## II. <u>DISCUSSION</u>

Section 182, subdivision (a), makes it a crime for "two or more persons [to] conspire: [¶] . . . [t]o commit any crime." The elements of criminal conspiracy include an *agreement* by one or more persons to commit the crime and some *overt act* to effect the object of the conspiracy. (§§ 182, subd. (b),

6

184 ["No agreement amounts to a conspiracy, unless some act, beside such agreement, be done within this state to effect the object thereof, by one or more of the parties to such agreement"].)

Munoz contends that (1) the trial court's instruction pursuant to CALCRIM No. 563—the model instruction on conspiracy to commit murder—violates the Sixth Amendment because it allows jurors to convict without unanimously agreeing on the specific overt act; (2) section 184, the statute requiring that "some act, beside such agreement, be done within this state to effect the object thereof," is unconstitutionally vague as applied to Munoz; (3) the court erred by not sua sponte instructing that unanimity was required as to the conspiratorial agreement; and (4) the cumulative prejudice of these purported errors compels reversal. Munoz's contentions are unavailing.

A. <u>Instruction that Unanimity Not Required as to Specific Overt Act</u>

The trial court instructed the jury on conspiracy to commit murder in accord with CALCRIM No. 563, which stated that the prosecution would have to prove the following: "1. The defendant intended to agree, and did agree, with one or more of the alleged members of the conspiracy, . . . Villegas[,] to intentionally and unlawfully kill; [¶] 2. At the time of the agreement, the defendant, and one or more of the other alleged members of the conspiracy, intended that one or more of them would intentionally and unlawfully kill; [¶] 3. One of the defendants committed at least one of the [eight] included overt acts alleged on slides *37–39* to accomplish the killing; AND [¶] 4. At least one of the overt acts was committed in California." (Italics in original.)

The instruction defined "overt act" as follows: "The *overt act* is an act by one or more of the members of the conspiracy that is done to help accomplish the agreed upon crime. The overt act must happen after the defendant has agreed to commit the crime. The overt act must be more than

7

the act of agreeing or planning to commit the crime, but the overt act[] does not itself have to be a criminal act." (Italics in original.) The instruction then clarified that jurors need not agree unanimously on the act that constitutes the overt act: "You must all agree that at least one alleged overt act was committed in California by at least one alleged member of the conspiracy, but *you do not have to all agree on which specific overt act or acts were committed or who committed the overt act or acts.*" (Italics added.)

There is no dispute that the trial court's instruction complied with our Supreme Court's decision in *People v. Russo* (2001) 25 Cal.4th 1124 (*Russo*). *Russo* held that a "jury need not agree on a specific overt act as long as it unanimously finds beyond a reasonable doubt that some conspirator committed an overt act in furtherance of the conspiracy." (*Id.* at p. 1128.)

In *Russo*, our Supreme Court granted review to decide whether jury unanimity was required as to the overt act element of criminal conspiracy. (*Russo*, *supra*, 25 Cal.4th at p. 1128.) Looking at section 184, the high court recognized that "the requirement of an overt act is an element of the crime of conspiracy in the sense that the prosecution must prove it to a unanimous jury's satisfaction beyond a reasonable doubt. But that element consists of *an* overt act, not a *specific* overt act. Moreover, . . . section 182, subdivision (b), merely says one of the acts must be proved; it does not say about what the jury must be unanimous." (*Russo*, at p. 1134, italics in original.)

*Russo* further explained that a unanimity instruction is appropriate when there is a danger that the jurors may convict the defendant of a crime even though only some of the jurors believed the defendant guilty of one crime and other jurors believed the defendant guilty of another crime. By contrast, no unanimity instruction is required where there is only one conspiracy charged and the only possible uncertainty is how the defendant

8

perpetrated that conspiracy.  (*Russo*, *supra*, 25 Cal.4th at pp. 1134–1135.) Because there was no danger in *Russo* that some jurors would think the defendant was guilty of one conspiracy and other jurors would think she was guilty of a different conspiracy, no unanimity instruction was required.  (*Id.* at p. 1135.)

Here, Munoz was charged with only one conspiracy and evidence of only one conspiracy involving Munoz was presented at trial.  Pursuant to *Russo*, unanimity was not required as to the specific act constituting the overt act, and the trial court's use of CALCRIM No. 563 to instruct the jury was correct.  Munoz contends that the instruction was nevertheless erroneous on several grounds, but his arguments are unavailing.

### 1. *Erlinger* and *Ramos*

Munoz argues that *Russo* is no longer tenable in light of later United States Supreme Court cases declaring that a unanimous jury is guaranteed by the Sixth Amendment as applied to the states by the Fourteenth Amendment.  (*Ramos v. Louisiana* (2020) 590 U.S. 83, 93 (*Ramos*); *Erlinger v. United States* (2024) 602 U.S. 821 (*Erlinger*).)  He claims that *Russo* was based on the California Constitution (*Russo*, *supra*, 25 Cal.4th at p. 1132) when it was assumed, based on *Johnson v. Louisiana* (1972) 406 U.S. 356 (*Johnson*) and *Apodaca v. Oregon* (1972) 406 U.S. 404 (*Apodaca*), that the federal Constitution allowed for non-unanimous jury verdicts.  (See *People v. Feagley* (1975) 14 Cal.3d 338, 350, fn. 10; *People v. Vargas* (2001) 91 Cal.App.4th 506, 562.)  Because *Erlinger* and *Ramos* overruled *Johnson* and *Apodaca* on that point*,* Munoz argues that their new Sixth Amendment

juror unanimity requirement renders *Russo* and CALCRIM No. 563 incorrect.[5]

Munoz's argument misses the mark. Neither *Ramos* nor *Erlinger* addressed *Russo* or its construction of California's criminal conspiracy statutes. Nor did they decide whether jurors must agree unanimously on the specific act constituting the overt act that is required for criminal conspiracy.

*Erlinger* concerned the Armed Career Criminal Act, which imposes lengthy mandatory prison terms on defendants who commit violent felonies or serious drug offenses on three separate occasions. The question was "whether a judge may decide that a defendant's past offenses were committed on separate occasions under a preponderance-of-the-evidence standard, or whether the Fifth and Sixth Amendments require a unanimous jury to make that determination beyond a reasonable doubt." (*Erlinger*, *supra*, 602 U.S. at p. 825.) The United States Supreme Court held—and the government conceded—that the factual issues had to be decided by a jury, reiterating the fundamental principle that a fact increasing the penalty for a crime must be resolved by a unanimous jury beyond a reasonable doubt (or freely admitted in a guilty plea). (*Id.* at p. 834.) It did not address a criminal conspiracy charge, the overt act requirement set forth in section 184, or whether jurors must unanimously agree on the specific act constituting the overt act for criminal conspiracy.

---

[5] Munoz did not object to the CALCRIM No. 563 instruction in the trial court. Respondent contends that he therefore waived (or forfeited) his challenge to the instruction. But because Munoz's claim of error, if true, would affect his substantial rights, it is subject to review. (§ 1259; *People v. Hillhouse* (2002) 27 Cal.4th 469, 503; *People v. Johnson* (2015) 60 Cal.4th 966, 993.)

10

In *Ramos*, the United States Supreme Court held that the Sixth Amendment's unanimity requirement applies in state criminal trials. (*Ramos*, *supra*, 590 U.S. at p. 93.)  *Ramos* targeted Oregon and Louisiana, where a defendant could be convicted based on 10-to-2 verdicts.  (*Id.* at p. 87.)  By contrast, California permitted then—and permits now—conviction of a defendant only if the verdict is unanimous.  (*Russo*, *supra*, 25 Cal.4th at p. 1132 ["a jury verdict must be unanimous"].)  *Russo* is therefore consistent with *Ramos*'s holding that criminal verdicts must be unanimous.  (*Ramos*, at p. 93 ["the Sixth Amendment's right to a jury trial requires a unanimous verdict to support a conviction . . . in state court"].)  *Ramos* did not address whether jurors must agree unanimously on the specific act constituting "some overt act" in section 184.  (See *People v. Wilson* (2020) 56 Cal.App.5th 128, 161, fn. 17 ["Given California's existing requirement of a unanimous verdict, the Supreme Court's decision [in *Ramos*] has no direct effect on California and does not change our analysis" on whether a unanimity instruction was needed for a conspiracy charge].)

To the extent our high court in *Russo* interpreted section 184 to mean that the jury must unanimously agree only on some overt act, and not on a specific overt act, we are bound to follow it.  (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 (*Auto Equity Sales*).)  Munoz has not established any reason to do otherwise.

2.  <u>Criticism of *Russo*:  Dual Track</u>

Munoz argues that *Russo* set up an improper "dual track" by which an overt act is an essential element of the crime for purposes of proof beyond a reasonable doubt, but it is not an element of the crime for purposes of unanimity.  He calls this "convolut[ed]" and claims that federal law now

11

makes clear that if an "overt-act is an essential element for proof, it is necessarily also an essential element for unanimity."

Munoz mischaracterizes *Russo*. *Russo* explained that "the requirement of an overt act is an element of the crime of conspiracy in the sense that the prosecution must prove it to a unanimous jury's satisfaction beyond a reasonable doubt. But that element consists of *an* overt act, not a *specific* overt act." (*Russo, supra*, 25 Cal.4th at p. 1134.) In other words, the language in section 184 requiring proof of "some overt act" means that the jury must find—beyond a reasonable doubt *and* unanimously—that an overt act was committed to effect the object of the conspiracy, but the jury need not agree on the specific act that was committed. (*Russo*, at p. 1134.) *Russo* therefore did not "dual-track" an element of a specific overt act; rather, it concluded that the element was merely that some overt act was committed.

### 3. Danger Avoided by Unanimity Requirement

Munoz further argues that the Sixth Amendment demands unanimous agreement on the specific act constituting the overt act because of the dangers that arise when unanimity is not required. But *Russo* addressed this point. The danger averted by the unanimity instruction is the risk that arises when *more* than one conspiracy involving the defendant is alleged and jurors might return a guilty verdict where only some of them believed the defendant committed one of the alleged conspiracies and others believed the defendant committed another alleged conspiracy. (*Russo, supra*, 25 Cal.4th at pp. 1134–1135.) That danger does not exist here because only one conspiracy involving Munoz was alleged.

### 4. External and Internal Unanimity

In his reply brief, Munoz argues that the jury should be unanimous not only "extern[ally]" as to the crime, but also "internal[ly]" as to the act

12

constituting the element of the crime. He argues: "If the Sixth Amendment requires [external] jury unanimity in the sense [that] 12 votes must support a general verdict of guilt, then the Sixth Amendment necessarily requires internal unanimity of 12 votes for the same act charged when the evidence shows more than one act could constitute the crime."

Again, the overt act element in section 184 is that the jury must unanimously agree that a conspirator perpetrated an overt act, not that the conspirator perpetrated a specific act among those alleged. As Munoz admits, even after *Ramos*, "internal unanimity for an overt act in the crime of conspiracy is constitutionally necessary or mandated . . . *if* a specific overt act is a necessary element of the crime of conspiracy." Our Supreme Court determined otherwise in *Russo*. (*Russo*, *supra*, 25 Cal.4th at p. 1134.)

### 5. Interpretation of Section 184

Munoz criticizes *Russo*'s construction of section 184 in several other respects. First, he contends that the section 184 requirement of "some act" effecting the object of the conspiracy must refer to a *specific* act, because section 182, subdivision (b) requires that "one or more overt acts [be] expressly alleged in the indictment or information" and that "one of the acts alleged [be] *proved*." (Italics added.) He insists that there is "simply no reason to require the pleading and proof of specific overt acts unless those *specific* acts constitute a part of the unit of prosecution for the crime of conspiracy in regard to which the jury must be unanimous." However, we are obliged to follow our high court's interpretation of the statute. (*Auto Equity Sales*, *supra*, 57 Cal.2d at p. 455.)

Munoz next argues that, if the Legislature had intended that jurors would not have to agree unanimously on a specific overt act, it could have said so as it did in section 288.5 (criminalizing continuous child molestation).

13

Section 288.5 requires proof that the defendant engaged "in three or more acts of substantial sexual conduct" with a child "over a period of time, not less than three months in duration" (§ 288.5, subd. (a)), but specifies that a jury "need unanimously agree only that the requisite number of acts occurred[,] not on which acts constitute the requisite number" (*id.*, subd. (b)).

But section 288.5 does not help Munoz. Aside from the fact that we defer to *Russo*'s construction of section 184, it is reasonable to conclude that section 184 provides implicitly what section 288.5 states explicitly. (See *People v. O'Connor* (2004) 115 Cal.App.4th 669, 685 [Legislature need not use the same language to reach the same result]; *In re Pedro T.* (1994) 8 Cal.4th 1041, 1048 [same].)[6]

Munoz next argues that "[t]he *Russo* interpretation was simply driven by the [high c]ourt's policy judgment that non-unanimity in regard to overt acts in a charge of conspiracy was simply better for the administration of justice in California—a determination it was not authorized to make even without the constraint of the federal constitution. (Cal. Const., Art. III, § 3.)" (Fn. omitted.) His speculation is misguided. He demonstrates neither an error in *Russo*'s interpretation of the conspiracy statutes nor any basis for this court to diverge from its holding.

Finally, Munoz's reliance on *Richardson v. United States* (1999) 526 U.S. 813 (*Richardson*) is misplaced. At issue there was the interpretation of a federal criminal statute that prohibited a person from "'engag[ing] in a continuing criminal enterprise.'" (*Id.* at p. 815, quoting

---

[6] Munoz has not challenged the constitutionality of section 288.5, which has been upheld against constitutional attack. (See *People v. Whitham* (1995) 38 Cal.App.4th 1282, 1295–1298 [§ 288.5 does not violate the California Constitution's requirement of jury unanimity or the due process clause of the U.S. Constitution].)

14

21 U.S.C. § 848(a).) A " 'continuing criminal enterprise' " was defined in the statute "as involving a 'violation' of the drug statutes where 'such violation is a part of a continuing series of violations.' " (*Richardson*, at p. 815, quoting 21 U.S.C. § 848(c).) The lower court instructed the jury that to find a "continuing criminal enterprise," it did not have to unanimously agree as to which drug violations shown by the evidence occurred as long as they all agreed that any three of them occurred. (*Richardson*, at p. 816.) The Supreme Court disagreed, holding that "in a federal criminal case brought under § 848 [the jurors] must unanimously agree not only that the defendant committed some 'continuing series of violations' but also that the defendant committed each of the individual 'violations' necessary to make up that 'continuing series.' " (*Id.*, at p. 815.)

*Richardson* is inapposite because it interpreted a federal statute concerning a criminal enterprise, not section 184. While *Richardson* observed that the federal Constitution may limit a state's power to define crimes in "ways that would permit juries to convict while disagreeing about means, at least where that definition risks serious unfairness and lacks support in history or tradition" (*Richardson*, *supra*, 526 U.S. 813 at p. 820), Munoz has not shown that *Russo*'s reading of section 184 is inconsistent with the fairness, history or tradition of the unanimity requirement. He therefore fails to establish error.

B. <u>Section 184: Vagueness as Applied</u>

Munoz argues that section 184 is unconstitutionally vague as applied to his particular case. We disagree.[7]

---

[7] Respondent argues that Munoz forfeited his claim by failing to raise it in the trial court. We find no forfeiture and proceed to the merits. (*People v. Vera* (1997) 15 Cal.4th 269, 276 [claim asserting deprivation of certain fundamental constitutional rights can be raised for the first time on appeal].)

"The constitutional interest implicated in questions of statutory vagueness is that no person be deprived of 'life, liberty, or property without due process of law,' as assured by both the federal Constitution (U.S. Const., Amends. V, XIV) and the California Constitution (Cal. Const., art. I, § 7)." (*Williams v. Garcetti* (1993) 5 Cal.4th 561, 567.) A criminal statute must be sufficiently definite "that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." (*Kolender v. Lawson* (1983) 461 U.S. 352, 357; see *Grayned v. City of Rockford* (1972) 408 U.S. 104, 108–109 ["A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application."]; *People v. Boyce* (2014) 59 Cal.4th 672, 694 [in an as-applied challenge, the " 'statute must be definite enough to provide a standard of conduct for those whose activities are proscribed as well as a standard for the ascertainment of guilt by the courts called upon to apply it' "].)

Munoz does not contend that section 184 is vague on its face when it defines "overt act" as "some act, beside [the conspiratorial] agreement," that is "done within this state to effect the object thereof, by one or more of the parties to such agreement." Instead, he urges that the statute was impermissibly vague as it was enforced against him in the circumstances of his case. (*People v. Nguyen* (2013) 212 Cal.App.4th 1311, 1326.) More specifically, Munoz contends that section 184, by not requiring juror unanimity on the act constituting an overt act, gives the prosecutor too much power to shape the litigation and not enough guidance to jurors in assessing whether any of the acts constituted an overt act. This, Munoz insists, results in a violation of due process. He argues that the prosecutor "may willy-nilly

16

allege" a "string of overt acts, allowing the jurors to pick and choose whichever he or she pleases without accepting any of the choices of the other eleven." Because eight overt acts were submitted, six of which were arguably planning activity, he claims that there was a "high chance" that "the verdict was predicated on an amalgamation of overt acts over which there was no agreement but which constituted simply a generic determination that an overt act occurred."

Munoz does not establish that section 184 is vague as applied to his circumstance, which is apparently the prosecutor's allegation of multiple overt acts that could arguably constitute planning activity. To the extent Munoz argues that the problem is the lack of a unanimity requirement in the statute, his argument suffers from the same flaws as his argument regarding the constitutionality of CALCRIM No. 563. To the extent he argues that section 184 provides insufficient guidance as to what constitutes an overt act, and how to distinguish overt acts from planning activity, we disagree. A prosecutor, far from being allowed to "willy-nilly allege the entire course of evidence" as overt acts, may only allege that an act was an overt act if it was separate from the agreement, done within this state to effect the object of the agreement, and committed by one of the parties to the agreement. (§ 182, subd. (a).) As the jury was instructed, the act must be "done to help accomplish the agreed upon crime" and "must be more than the act of agreeing or planning to commit the crime." Munoz does not establish that these parameters are insufficient. Accordingly, he fails to show that section 184 was impermissibly vague as applied to him, even though the prosecutor alleged multiple overt acts.

17

C.  <u>Unanimity on the Agreement Element of Conspiracy</u>

In the phone call between Munoz, Porter, and Villegas on February 2, 2017, Porter stated that he wanted Baby D killed.  Villegas agreed, but Munoz did not respond.  In closing argument, the prosecutor characterized this as a different conspiracy than Munoz's conspiracy to kill Bagsaw.  The prosecutor argued:  "Still on that same long phone call, Porter puts in his *separate* request, 'Feel me, if Baby D there, tag him too.'  And, of course, Villegas says, 'Sure, I don't like him either.'  So we actually have a second conspiracy to murder here; all those steps that take[] [Villegas] later that night to go to the Fog Line, [Villegas] also knows that he's now looking for this person, too."  (Italics added.)

Citing *Russo*, Munoz argues that the trial court should have instructed the jury sua sponte that unanimity was required as to the conspiratorial agreement forming the basis of the charge against him, because the evidence showed two discrete agreements—the agreement to kill Bagsaw and the agreement to kill Baby D.  (See *Russo*, *supra*, 25 Cal.4th at pp. 1134–1135; see CALCRIM No. 3500.)  He contends that the failure to do so violated his Sixth Amendment right to jury unanimity.

We disagree.  As the evidence showed and the prosecutor confirmed in closing argument, the agreement to kill Baby D was between Porter and Villegas, while the agreement underlying the charge against Munoz was between Munoz and Villegas.  Indeed, the prosecutor repeatedly described the basis for Munoz's guilt as the agreement to kill Bagsaw, not Baby D.  Furthermore, although Munoz was on the call with Porter, he did not agree to kill Baby D or participate in the conversation.  His mere association with Porter and Villegas does not establish conspirator liability.  (*People v. Mata* (1955) 133 Cal.App.2d 18, 22.)  Thus, at the trial of Munoz's guilt, the

18

evidence of an agreement between Porter and Villegas did not suggest an additional conspiratorial agreement that could form the basis of the charge against Munoz, and no unanimity instruction was therefore required.

In his reply brief, Munoz argues that his silence at the formation of the conspiracy to kill Baby D was enough to support a conclusion that he participated in this second conspiracy. He argues that he was conducting gang business on the call and a rational juror could conclude that Munoz's silence constituted his approval or adoption of Porter's animus against Baby D and their conspiratorial agreement. We disagree, and Munoz provides no legal authority substantiating his position. He therefore fails to establish error.

D. Cumulative Prejudice

Munoz contends that, if the purported errors do not individually rise to the level of reversible error, their cumulative effect was prejudicial. The argument is unavailing. As we have explained, the trial court did not err so there is no cumulative prejudice. (See *People v. Bolin* (1998) 18 Cal.4th 297, 345; see also *People v. Sedillo* (2015) 235 Cal.App.4th 1037, 1068 ["There can be no cumulative error if the challenged rulings were not erroneous."].) Moreover, Munoz received a fair trial. Reversal is therefore not required. (*People v. Cunningham* (2001) 25 Cal.4th 926, 1009.)

III.  DISPOSITION

The judgment is affirmed.

Chou, J.


WE CONCUR:

Jackson, P. J.
Simons, J.

A168292/*People v. Matthew Jesse Munoz*

19

A168292/People v. Matthew Jesse Munoz

Trial Court:        Superior Court of the County of Alameda

Trial Judge:        Michael J. Gaffey

Counsel:        Mark David Greenberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters and Jeffrey M. Laurence, Assistant Attorneys General, Eric D. Share, Brady Baldwin and Cara M. Newlon, Deputy Attorneys General, for Plaintiff and Respondent.